# Exhibit C

## SUBLEASE AGREEMENT

**THIS SUBLEASE AGREEMENT** (this "Sublease") is made the 13th day of Feb, 2017, by and between **Circle K Stores Inc.**, a Texas corporation ("Landlord"), and **PARADISE PETROLEUM LLC**, a Tennessee limited liability company ("Tenant").

### RECITALS

1. Pursuant to that certain Lease Agreement between Realty Income LP, successor-in-interest to RI TN 2, LLC, as landlord (hereinafter called "Master Landlord"), dated October 13, 2003, (the "Master Lease"), and Landlord, as tenant, Landlord is the successor-in-interest to The Pantry, Inc. by merger and is the owner of a leasehold interest in that certain real property located in Hamilton County, Tennessee, more generally known as 2300 Jenkins Rd, Chattanooga, Tennessee.

2. Landlord desires to sublease the Premises to Tenant, and Tenant desires to sublease and take the same from Landlord.

NOW, THEREFORE, in consideration of the rent to be paid, the mutual covenants and agreements herein contained and for other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged by the parties hereto, Landlord hereby subleases and rents to Tenant, and Tenant hereby subleases and rents from Landlord, the Premises upon the terms, provisions and conditions hereinafter set forth:

1. **Recitals.** Landlord and Tenant represent and warrant to one another that the recitals set forth above are true and correct as of the date of execution of this Sublease by all parties (the "Effective Date"), and agree that such recitals are incorporated herein by reference.

2. **Premises.** The "Premises" are the land and improvements thereon generally described above and constituting an approximately 1250 square foot building on .83 acres (more or less), and being more particularly described in **Exhibit "A"** attached hereto and made a part hereof.

3. **Term.** The term of this Sublease (the "Term") shall begin on _____, 2017 (the "Commencement Date") and shall continue until 11:59 p.m. on August 31, 2023.

4. **Renewal Option.** There is no option in favor of Tenant to renew or extend the Term of this Sublease. This Sublease does not require or obligate, and will not be construed or deemed to require or obligate, Landlord to exercise any renewal option that may exist under the Master Lease (as hereinafter defined in Section 13).

5. **Rental.**

    (a) **Payment of Rent.** Tenant shall pay rent (the "Rent") to Landlord as set forth in this section. Subject to subparagraph (c) of this section, the Rent (together with any and all sales or other similar taxes assessed against rents generally) shall be paid by Tenant to Landlord in equal monthly installments in advance commencing on the Base Term Commencement Date (unless stated to the contrary elsewhere herein) and continuing on the first day of each month thereafter during the Term.

All Monthly Base Rent herein provided to be paid by Tenant to Landlord shall be payable to Landlord by Electronic Funds Transfer ("EFT"), and Tenant shall complete and return to Landlord the Electronic Funds Transfer Authorization attached hereto as **Exhibit "B"**. Upon receipt of the Electronic Funds Transfer Authorization form, Landlord will contact Tenant to verify all information. Landlord will provide Tenant with a facsimile notice two days prior to any money being drafted, with all payments then being drafted from Tenant's bank account on the 5th day of each month (or five days after the due date if not on the 1st of the month), or in accordance with Landlord's established EFT policies from time to time. All payments of rent shall be without any abatement, offset, deduction, claim, counterclaim, setoff or reduction whatsoever, and shall be payable in

1

lawful money of the United States which shall be legal tender for the payment of all debts and dues, public and private, at the time of payment.

Any amounts due hereunder not otherwise paid by EFT shall be remitted to the following address:

>Circle K Stores Inc.
>PO Box 203249
>Dallas TX 75320-3249

or to such other person or place as Landlord shall otherwise designate by written notice to Tenant.

In addition to providing the Electronic Funds Transfer Authorization form attached hereto as **Exhibit "B"**, Tenant shall provide Landlord with a Substitute W-9 form, attached hereto as **Exhibit "C"**. **The Substitute W-9 form must be provided at the same time as this Sublease is signed In order for this Sublease to take effect.**

   (b) Amount of Rent. Subject to the provisions of subparagraph (c) of this section, the Rent during the Term is and shall be as follows:

     (i) Free-Rent Period. INTENTIONALLY OMITTED.

     (ii) The annual Rent shall be $48,278.88 payable in monthly installments of $4,023.24 per month through October 31, 2018; provided, however, if the Commencement Date falls on a day other than the first day of a calendar month, then the Rent for such month shall be prorated.

     (iii) Commencing November 1, 2018, the monthly rental amount throughout the remaining Term of this Agreement shall increase as described in Section 4.a) and 4.b) of the Master Lease.

   (c) Net Lease. Tenant acknowledges and agrees that it is intended that this Sublease is and shall be, except as otherwise expressly stated herein, a complete and absolute "net lease" to Landlord, and that the Rent is net of all expenses and charges (including, without limitation, ad valorem personal and real property taxes, and sales and other similar taxes assessed against rents), and that Landlord is not responsible during the Term for any costs, charges, expenses, and outlays of any nature whatsoever arising from or relating to the Premises, the use and occupancy thereof, the contents thereof, or the business carried on therein. From and after the Rent Commencement Date, Tenant shall pay all charges, impositions, costs, and expenses of every nature and kind relating to the Premises, except as herein expressly provided to the contrary. Tenant covenants and agrees that the Rent to be paid hereunder shall be, except as otherwise expressly provided herein or permitted by law, paid without off-set or deduction.

   (d) Additional Rent. In addition to the Rent as described in Sections 5 (a) and 5 (b) above, Tenant will pay to Landlord as "Additional Rent" any expense as defined hereinafter in Sections 8, 9 and 14.

   (e) Late Charge. If any payment of Rent or Additional Rent is received by Landlord after the fifth (5th) day of the month, or if any other sum of money due under this Sublease by Tenant to Landlord is not paid within ten (10) days after the same is due, Tenant, subject to contrary applicable law, agrees to pay to Landlord a late charge (the "Late Charge") equal to the greater of (i) five percent (5%) of the amount of the then outstanding balance due Landlord, and (ii) Fifty and No/100 Dollars ($50.00), plus interest on such delinquent payment, accruing at twelve percent (12%) per annum, compounded monthly, of the amount of delinquent payment. The Late Charge shall be immediately due and payable, but shall only be assessed once for each late payment. Tenant acknowledges that any Late Charge is made to compensate Landlord for additional costs incurred by Landlord as a result of Tenant's failure to make a payment when due, and is not a payment for the extension of the due date of any payment. Acceptance by Landlord of any payment from Tenant under this Sublease in an amount less than that which is currently

due shall in no way affect Landlord's rights under this Sublease and shall in no way constitute an accord and satisfaction, and failure of Landlord to insist upon the payment of a Late Charge, isolated or repeated, shall not be deemed a waiver of Landlord's right to collect any Late Charge for any future delinquencies. In the event a check tendered by Tenant to Landlord for Rent or Additional Rent is dishonored, Tenant, subject to contrary applicable law, shall further pay to Landlord a fee of Fifty and No/100 Dollars ($50.00) for each such occasion, and Landlord may require that any or all future payments of Rent and/or Additional Rent be in the form of a bank cashier's check or wire transfer of immediately available federal funds to an account designated by Landlord.

(f) **Sales Tax**. Together with the Rent and Additional Rent, or the payment of any other sum due hereunder upon which sales tax may be levied, Tenant shall pay to Landlord the sales tax due thereon, if any, at the time of payment of the same.

6. **Security Deposit**. Landlord hereby acknowledges receipt from Tenant of the sum of $4,860.11 (the "Deposit"), to be held as collateral security by Landlord for the payment of Rent and any other sums of money for which Tenant will become liable to Landlord under this Sublease and for the faithful performance by Tenant of all other covenants and agreements made herein, it being expressly understood that the Deposit will not be considered an advance payment of Rent or any other sums of money due under this Sublease, or a measure of Tenant's liability for damages in the event of default by Tenant. Landlord will not be required to hold the Deposit in a separate account. Tenant will not be entitled to interest, if any, accrued on the Deposit. Landlord, without prejudice to any other remedy available to Landlord, is permitted to claim as a deduction from the Deposit (a) all charges for cleaning, painting, and/or repairing any part of the Premises (including, without limitation, fixtures, appliances, plumbing, and electrical fixtures and outlets) due to any damage, other than normal wear, caused by Tenant or any employee, invitee, guest, licensee, or other person, (b) other amounts necessary to compensate Landlord for delinquent and additional or unpaid Rent and other sums of money owed by Tenant under this Sublease, and (c) to satisfy any other covenant or obligation of Tenant hereunder. If any portion of the Deposit is used or applied as permitted above, Tenant will, within fifteen (15) days after written demand therefore, deposit cash with Landlord in an amount sufficient to restore the Deposit to its original amount. The Deposit may not be used or applied by Tenant to cover a payment of Rent for any reason whatsoever without the prior written consent of Landlord, which consent may be withheld for any reason or no reason. If Tenant is in default under this Sublease at the expiration of the Term or the earlier termination of this Sublease, Landlord may retain all or any portion of the Deposit without prejudice to, or preclusion from, Landlord pursuing any remedy available to Landlord under this Sublease or Tennessee law.

7. **Contingency Period**. INTENTIONALLY OMITTED.

8. **Taxes.** (a) As additional rent, Tenant shall pay all taxes, assessments, duties, impositions and burdens (hereinafter referred to as "Taxes") assessed, charged or imposed upon the Premises or any building thereon, or upon the owner or occupier thereof. The Taxes for the first and last years of this Agreement shall be prorated between the Landlord and the Tenant based on the number of days in the Term falling within the tax year in question (e.g., the calendar year for ad valorem real property taxes), with the Tenant being responsible for all such Taxes for the days falling within the Term hereof. The Landlord shall pay all Taxes directly to the governmental agency or agencies administering the assessment and collection of the same. **Tenant shall pay monthly installments of $836.87 to Landlord**, on account of Taxes in advance of the time when such Taxes are fixed by the governmental agency or agencies administering the same (i.e., based on an estimate made by Landlord of the amount of such Taxes that will be due), together with the monthly installment of rent due under paragraph 5 hereof. The amount of such installments may be increased from time to time by Landlord, by written notice to Tenant, so that the total of such installments will be sufficient to pay the full amount of Taxes when due. Following the end of each applicable tax year (e.g., the calendar year for ad valorem real property taxes), Landlord shall notify Tenant as to the actual amount of Taxes due by Tenant for such tax year. If the monthly installments made by Tenant for such tax year exceed the actual amount of the Taxes due for such tax year, then Landlord will credit any such excess to unpaid rent due by Tenant thereafter, or, if such credit shall relate to the last year of the Term, Landlord shall pay Tenant an amount equal to such credit. If the monthly installments made by Tenant for such tax year are less than the actual amount of Taxes due for such tax year, then Tenant

3

shall pay Landlord any such deficiency within fifteen (15) days after Tenant's receipt of Landlord's notice for the same.

All Taxes due by Tenant under the foregoing paragraph shall be deemed to be additional rent, and Tenant shall pay to Landlord any applicable sales tax relating to the same at the time payments are made on account of Taxes. In the event that at any time during the Term of this Agreement Landlord fails to collect Taxes from Tenant, in the form of monthly installments, such failure shall not be deemed to be a waiver of Landlord's right to later seek payment on account of such Taxes at any time during the Term hereof or subsequent to the expiration of this Agreement.

(b) Tenant will pay, before delinquency, any and all taxes levied, assessed, charged, or imposed upon Tenant's equipment, furniture, fixtures and other personal property (whether leased and owned) located in, on, or at the Premises, including, without limitation, any ad valorem personal property taxes and any taxes relating to its stock in trade kept on the Premises, directly to the governmental agency or agencies administering the tax or assessment, and will abide by all valid laws, rules and regulations of governmental authorities relating to such taxes with respect to the operation of the business operated on the Premises by Tenant, including, without limitation, sales taxes.

9. **Repair and Maintenance.** Tenant shall be solely responsible for all repair and maintenance of the Premises, which shall require Tenant, at its sole expense, to make all necessary repairs and replacements to the Premises. Such repairs and replacements shall be made promptly, as and when necessary. All repairs and replacements shall be in quality and class at least equal to the original work. As part of the required maintenance, Tenant hereby agrees to keep the Premises clean, attractive and in good order and condition and to keep the areas surrounding the Premises, if any, including driveways, sidewalks and parking areas free of unlicensed, wrecked or dismantled vehicles, trash, ice and all other hazardous substances and conditions. On default of the Tenant in making such repairs and replacements or performing such maintenance, the Landlord may, but shall not be required, to make such repairs and replacements or perform such maintenance for the Tenant's account, and the expense thereof shall constitute and be collectible as Additional Rent, payable to Landlord on Landlord's demand.

10. **Alterations.** Tenant may make improvements and / or alterations to the Premises, provided Tenant first provides Landlord, for Landlord's review and approval, with plans and specifications for any such improvements and / or alterations. Landlord may withhold approval of such improvements and / or alterations in its sole discretion, or may condition its consent to such improvements and / or alterations in such way or manner as Landlord may elect in its sole discretion (for purposes of example and not limitation, Landlord may require Tenant to return the Premises to its original condition at the expiration of the Term or the earlier termination of this Sublease). All work undertaken by Tenant will be performed in a professional, workmanlike manner and in compliance with the applicable building codes. Tenant will carry out Tenant's improvements and / or alterations in the Premises only during times agreed to in advance by Landlord and in a manner which will not interfere with the rights of Landlord or other tenants in the Building. Unless otherwise agreed, and subject to Tenant's right to remove its equipment and fixtures as elsewhere provided herein, such improvements including, without limitation (the "Improvements") will remain with the Premises at the expiration of the Term or the earlier termination of this Sublease as the sole property of Landlord.

11. **No Liens.** Landlord's interest in the Premises, or any other portion of the Property, is not and will not be subject to liens for work or improvements made by Tenant to the Premises. Anything in this Sublease to the contrary notwithstanding, it is the agreement of the parties that any lien for work or improvement made by the Tenant to the Premises including, without limitation, the Improvements will extend solely to the leasehold interest of Tenant hereunder and not to Landlord's or Master Landlord's interest in the Premises. Tenant agrees to notify every person making improvements, including, without limitation, the Improvements, to the Premises of this Section, and Tenant's failure to do so will be a default under this Sublease. In the event any such lien is claimed against any or all of the Premises, or any other portion of the Property, because of work done for or materials furnished to Tenant or the Premises, then Tenant promptly will cause the same to be discharged. If Tenant fails to do so within ten (10) days after Landlord's demand, then, in addition to any other right or remedy of Landlord, Landlord may discharge the

same. Any amount paid by Landlord for any of the aforesaid purposes and Landlord's attorneys' fees and costs will be paid by Tenant to Landlord immediately upon demand. At Landlord's election, a memorandum or short form of this Sublease will be recorded in the public records of Hamilton County, Tennessee to give notice of the above stated agreement in accordance with the provisions in Tennessee Statutes.

**12.     Utilities.** Tenant will pay, at its own cost and expense, for all water, sewer, electrical, gas, telephone, cable, fiber optic conduit, and any other utility service (the "Utilities") used by Tenant in connection with its operations at the Premises, directly to the appropriate utility service provider. Tenant will be responsible for any deposits related to the Utilities.

**13.     Master Lease.** Landlord's leasehold interest in the real property constituting the Premises has been created pursuant to that certain lease agreement (the "Master Lease") more particularly described in **Exhibit "D"** attached hereto and made a part hereof. The landlord under the Master Lease is sometimes herein referred to as the "Master Landlord." The Master Lease is hereby, by this reference, made a part of this Sublease with like effect as if fully set forth herein. If any provision of this Sublease conflicts (a "Conflicting Provision") with any provision of the Master Lease so as to render performance of the Conflicting Provision a default under the Master Lease, then the Conflicting Provision will be deemed modified to the extent necessary so that performance of the Conflicting Provision will not result in a default under the Master Lease. Nothing in this Sublease will be construed to grant a right in excess of Landlord's rights under the Master Lease or to permit a violation of the Master Lease. Notwithstanding anything else to the contrary herein, if for any reason the term of the Master Lease will terminate prior to the expiration of the Term, the Term will, at the sole option of Landlord, be automatically terminated as of the date of termination of the term of the Master Lease, with the rights and obligations of the parties hereto being the same as if such termination date were the regularly scheduled date for expiration of the Term; provided, however, that Landlord's right to terminate this Sublease will not accrue to the extent that the Master Lease is terminated by virtue of a default by Landlord under the Master Lease (except in the case of a default caused by an action or inaction of Tenant) or a voluntary termination of the Master Lease by Landlord and Master Landlord (except in the case where Landlord or Master Landlord has the right to terminate due to condemnation, casualty, or similar circumstance).

**14.     Insurance.** Tenant covenants and agrees that from and after the Commencement Date Tenant will carry and maintain, at Tenant's sole cost and expense, continuously in force the following types of insurance, in the amounts specified, or such other amounts as Landlord, from time to time, in its sole discretion, may require, with a reasonable deductible consistent with standard industry practice, and in the form hereinafter provided for:

(a)     <u>Public Liability and Property Damage</u>. Commercial general public liability and property damage insurance with a combined single limit of Three Million Dollars ($3,000,000.00), or such other amount as Landlord from time to time, in its sole discretion, may require, insuring Landlord and Tenant, or such other amounts as Landlord, from time to time, in its sole discretion may require, with a reasonable deductible consistent with standard industry practice, against any and all liability for accidents upon, at, in, or about the Premises or arising out of the maintenance, use, or occupancy thereof. All such personal injury liability insurance and property damage liability insurance will insure specifically the performance by Tenant of the indemnity provisions set forth herein as to liability for injury to or death of persons and injury or damage to property or the Premises.

(b)     <u>Building and Improvements</u>. Tenant shall keep the Premises and all Improvements located upon the Premises insured against loss or damage by fire and extended coverage in an amount equal to the replacement cost of the Improvements on the Premises. In the event of an insured covered loss, the application of the insurance proceeds shall be utilized to completely restore the applicable improvements on the Premises. Notwithstanding anything to the contrary set forth herein, it is the intent of Landlord and Tenant that the proceeds of such insurance coverage be used to repair or restore the Premises to their condition prior to such casualty to the extent commercially practicable. The insurance required to be maintained by this Section 14 (b) shall provide that payments for losses be made jointly to Landlord and/or Landlord's mortgagee and Tenant.

(c)     Tenant Improvements.  Insurance covering all Tenant's leasehold improvements, in an amount not less than the full replacement cost without deduction for depreciation from time to time during the Term, providing protection against any peril included within the classification "Fire and Extended Coverage", together with insurance against sprinkler damage, vandalism, theft and malicious mischief. Any policy proceeds designated for leasehold improvements will be used for the repair or replacement of the leasehold improvements.

(d)     Workman's Compensation.  Tenant will maintain workman's compensation coverage as required by the laws of the State of Tennessee, the laws of the United States of America and any other governmental or regulatory entity or agency having jurisdiction, and employer's liability insurance in an amount not less than $500,000, or such other amounts as Landlord, from time to time, in its sole discretion, may require, with a reasonable deductible consistent with standard industry practice.

(e)     Business Interruption.  Tenant will maintain business income and interruption insurance respecting Tenant's operations from the Premises sufficient to cover Tenant's overhead and payroll for at least six (6) months.

(f)     Alcoholic Beverage Liability. If permitted pursuant to the terms of this Sublease and by applicable law, and if Tenant, a subtenant or any other person sells, stores, uses or gifts alcoholic beverages on or from the Premises, then prior to the sale, storage, use or gift of alcoholic beverages on or from the Premises by Tenant, a subtenant or any other person, Tenant, at its expense, shall obtain a policy or policies of insurance in a form acceptable to Landlord protecting Landlord and the Premises against any and all damages, claims, liens, judgments, expenses and costs arising under any present or future law, statute or ordinance of the State in which the Premises are located, or other governmental authority having jurisdiction of the Premises, by reason of any such storage, sale, use or gift of alcoholic beverages on or from the Premises. Such policy or policies of insurance shall contain the same or greater limits of public liability and property damage as provided in section (a) above.

(g)     Environmental Pollution/Impairment.  Tenant will maintain coverage in an amount of at least One Million Dollars ($1,000,000) on a continuous and uninterrupted basis insuring Purchaser for all environmental liabilities arising out of, but not limited to, the storage, handling, dispensing, and/or sale of motor fuel products and lubricants at the Premises, and/or the ownership and operation of Purchaser's business(es) at the Premises.  Such environmental/pollution impairment coverage shall extend at least two (2) years beyond the expiration, termination, or nonrenewal of this Sublease. Purchaser may meet the requirement for environmental pollution/impairment coverage for underground storage tanks by participating in the federal Environmental Protection Agency ("EPA") approved state financial assurance fund or other EPA approved method to demonstrate financial responsibility or by satisfying any of the other financial assurance test requirements of the EPA's Financial Responsibility Regulations (40 CFR Part 280).

All policies of insurance provided for herein will be issued by insurance companies satisfactory to Landlord with general policyholders' rating of not less than A and a financial rating of A++ as rated in the most current available "Best's Insurance Reports", and qualified to transact business in the State of Tennessee, and will be issued in the names of Landlord, Master Landlord and Tenant. Such policies will contain a waiver of the right of subrogation against Landlord, and Master Landlord.  Such policies will be for the mutual and joint benefit and protection of Landlord, Master Landlord, and Tenant, and executed copies of such policies of insurance or certificates thereof will be delivered to the Landlord no later than upon delivery of possession of the Premises to Tenant and thereafter within fifteen (15) days prior to the expiration of the term of each such policy.  All public liability and property damage policies will contain a provision that the Landlord and Master Landlord, although named as insureds, will nevertheless be entitled to recovery under said policies for any loss occasioned to either of them, and their respective servants, agents and employees, by reason of the negligence or misconduct of the Tenant. As often as any such policy will expire or terminate, renewal or additional policies will be procured and maintained by the Tenant in like manner and to like extent.  All policies of insurance delivered to the Landlord must contain a provision that the company writing said policy will give to the Landlord fifteen (15) days notice in writing in advance of any cancellation or lapse or the effective date of any reduction in the amounts of insurance. All public liability, property damage and other

casualty policies will be written as primary policies, not contributing with and not in excess of coverage which the Landlord and Master Landlord may carry. Tenant will also maintain at its expense such other insurance as is customarily carried by businesses similar to Tenant's business in such amounts and with such conditions as Landlord may reasonably require. Landlord, in Landlord's discretion, may increase or require to be increased the amount of any policies to an amount that Landlord, in Landlord's sole discretion, deems appropriate.

Any cancellation of required coverage or failure of Tenant to provide Landlord evidence of such coverage immediately upon issuance or renewal of policy shall constitute an immediate default of this Sublease. On default of Tenant keeping any such insurance in force, Landlord may, but will not be required, to obtain such insurance, and the expense thereof will constitute and be collectible as Additional rent, payable to Landlord immediately upon Landlord's demand.

15. **Indemnification.** Tenant will and does hereby agree to indemnify, defend and hold harmless Master Landlord, Landlord, and Landlord's officers, employees, and agents, from and against any and all claims, suits, damages, actions or causes of actions arising during the Term for any personal injury, loss of life, property damage, loss, theft, or other claim sustained or incurred upon, at, in, or about the Premises. Tenant further agrees to indemnify, defend, and hold harmless Master Landlord, Landlord, and Landlord's officers, employees, and agents, from and against any and all claims arising from any breach or default not cured within the applicable period on the part of Tenant in the performance of any covenant or agreement on the part of Tenant to be performed pursuant to the terms of this Sublease. Tenant further agrees to indemnify, defend and hold harmless Master Landlord, Landlord, and Landlord's officers, employees and agents, from and against any and all claims or liability arising from the performance of any act of Tenant, and its employees or agents, including, without limitation, any improvement, repair, maintenance, replacement or restoration as required or authorized hereunder. The indemnifications set forth in this Section, such indemnifications to include all costs, attorneys' fees and costs, expenses, and liabilities incurred in connection with the defense of any such claim and the investigation thereof, will survive the expiration of the Term or the earlier termination of this Sublease.

16. **Casualty; Damage or Destruction.** If the Premises, or a portion thereof, will be damaged or destroyed by fire, casualty, or disaster during the Term, Landlord, at Landlord's sole option, will have the right to terminate this Sublease and in such event, Landlord shall be entitled to all of Tenant's insurance proceeds from Tenant's insurance policies required under this Sublease. In the event Landlord does not terminate this Sublease, this Sublease will remain in full force and effect, and none of the rent provided for in Section 5 hereof will abate. In such case, Tenant will promptly repair and restore the Improvements located at or on the Premises, including, without limitation, the Improvements, damaged or destroyed by such fire, casualty, or dispute to their condition immediately prior to such fire, casualty, or disaster. Tenant will have the right to the insurance proceeds from Tenant's insurance policies required under this Sublease that are available therefore. All insurance proceeds from Tenant's insurance policies remaining after application of the same to repair and restore the Premises will be shared equally by Landlord and Tenant. In the event of any damage or destruction, Tenant will commence repair and restoration as soon as reasonably possible and will diligently pursue the same until completion.

17. **Removal of Equipment and Fixtures.** Unless otherwise stipulated by the terms of the Master Lease attached hereto as **EXHIBIT "D"**, Tenant will remove or cause to be removed all of Tenant's personal property, trade or other fixtures, and equipment (including, but not limited to, all underground storage tanks and related piping) from the Premises by or at the expense of Tenant by the expiration of the Term or within three (3) days after the earlier termination of this Sublease. In the event such removal injures or damages any part of the Premises, or other portion of the Property, Tenant agrees to promptly repair such damage at its own expense. Tenant will otherwise peacefully yield up the Premises to Landlord at the expiration of the Term in a clean, broom swept condition, excepting any ordinary wear and tear, and alterations and changes approved or required of Tenant. As to any abandoned property, Landlord, in its sole discretion, may (a) retain the abandoned property for Landlord's benefit, in which event Landlord may leave the property at the Premises or remove the same from the Premises, (b) remove the abandoned property and dispose of the same, (c) deliver the abandoned property to Tenant, or (d) store the abandoned property for the benefit of Tenant, at Tenant's sole expense. In no event will Landlord be obligated to

deliver to Tenant the abandoned property or store the same for the benefit of Tenant. Tenant will pay to Landlord immediately upon Landlord's demand for the same the cost of such removal and disposal, delivery, and/or storage of such abandoned property.

   **18.   Transfer of Tenant's Rights and Obligations.**

   A.   Tenant may not pledge, sell, assign, trade, transfer, lease, sublease, license, or otherwise dispose of (collectively, "Transfer") any part of, right to, or interest in (i) the Premises, (ii) this Sublease, or (iii) any corporate ownership, partnership, limited liability company or other ownership interest in this Sublease without, in each case, the prior written consent of Landlord, which consent may be conditioned and/or withheld without cause or explanation at the sole discretion of the Landlord.

   B.   Landlord's consent to any Transfer will not constitute a waiver of Landlord's right to withhold consent to any subsequent Transfer.

   C.   Simultaneously upon any Landlord approved Transfer, Tenant or transferee shall pay to Landlord a nonrefundable transfer fee in the amount of $5,000.00.

   D.   Except as allowed herein, any purported Transfer in violation of this Sublease, whether by operation of law or otherwise, will be null and void and will constitute a material breach of this Sublease.

   **19.   Quiet Possession.** So long as Tenant is not in default under this Sublease, Tenant will lawfully, peacefully and quietly hold, occupy, and enjoy the Premises during the Term without any interference, hindrance, ejection, or molestation by Landlord or any person claiming under Landlord.

   **20.   Subordination and Attornment.** Tenant's rights under this Sublease will for all purposes and at all times be junior, subject and subordinate to any mortgage which presently, or may in the future, encumber the Premises, provided that Tenant's possession of the Premises will not be disturbed so long as Tenant is not in default hereunder. The provisions of this paragraph will be self-operating and this subordination will not require any further instruments or documentation from Tenant. Notwithstanding the foregoing sentence, Tenant agrees to promptly execute any certificate that may be requested by Landlord or Master Landlord, or any mortgagee having or planning to acquire a mortgage lien on the Premises, regarding the status of this Sublease as between Tenant and Landlord. Such a certificate may request, among other things, a statement in recordable form (a) certifying that this Sublease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as so modified), (b) stating the dates to which Rent and other charges payable under this Sublease have been paid, (c) that Rent has not been paid in advance, or that if Rent has been paid in advance, the specific time period for which Rent has been paid, (d) stating that Landlord is not in default hereunder (or if Tenant alleges a default stating the nature of such alleged default), and further stating such other matters as Landlord or its mortgagee will reasonably require. If Tenant fails to execute, acknowledge and deliver to Landlord such a statement within ten (10) days after Landlord's request for the same, Tenant will deemed to have acknowledged that this Sublease is unmodified and is in full force and effect, that all conditions under this Sublease to be performed by Landlord have been satisfied, and that any party for whom the statement was intended may rely upon such acknowledgments to the same extent as if the requested statement had been executed, acknowledged and delivered by Tenant without exception. Tenant further agrees to attorn to any purchaser or mortgagee who succeeds to the interest of Landlord hereunder.

   **21.   Compliance with Laws.** Tenant, at its sole cost, will comply with all laws, statutes, ordinances, rules, orders, regulations, requirements, and health codes of the federal, state, and local governments, and of any and all their departments and bureaus, applicable to the Premises, the condition thereof, Tenant's use of the same, and with respect to the conduct of Tenant's business therein (collectively, the "Laws"), including, without limitation, the Occupational Safety and Health Act, the Americans with Disabilities Act of 1990, and any of the Laws applicable to restaurants or regarding the disposal and transmission of Tenant's waste water (including, without limitation, any of the Laws regarding the installation, servicing, and maintenance of a grease trap or similar device). Tenant is and will be responsible

for obtaining and maintaining in effect all licenses, permits, and any other governmental approvals necessary to conduct the Intended Use at the Premises, including, without limitation, all occupational licenses. Tenant will and does hereby agree to indemnify, defend, and hold harmless Master Landlord, Landlord, and Landlord's officers, employees, and agents, from and against any claim, loss, or liability resulting from Tenant's failure to perform its obligations under this Section, which indemnification will survive the expiration of the Term or the earlier termination of this Sublease.

22. **Eminent Domain or Condemnation.** If all of the Premises are taken by any governmental authority through a condemnation proceeding, the money paid in said condemnation proceeding for said taking will be equitably prorated between Landlord and Master Landlord in accordance with their respective interests in the portion of the Premises taken, with Tenant entitled to any monies allowed for business damages and / or relocation costs of Tenant's personal property. Tenant will not have the right to assert any claim for its own account in any such condemnation proceedings. Provided, further, that if the taking by condemnation proceeding materially diminishes the value of the Premises as a business location for Tenant, Tenant will have the right and option to terminate this Sublease as of the taking or as of the time that Tenant's business operations are materially affected or reduced; provided, however, all agreed rent and obligations of Tenant will continue until Tenant vacates the Premises. The foregoing right and option to so terminate this Sublease, as above provided, will be exercised by Tenant, if at all, by written notice to Landlord given within ninety (90) days of such taking, and if such notice is not given within such ninety (90) day period, then Tenant will be deemed to have waived its right to terminate this Sublease pursuant to this Section.

23. **Hazardous Trade or Occupation.** Tenant agrees that no hazardous trade or occupation shall be permitted or conducted on the Premises and nothing will be done or permitted or nothing will be kept on or about the Premises which shall increase the risk of hazard of fire or other damage. Tenant further covenants not to conduct any business which is contrary to or in violation of the laws of the United States of America or of the State of Tennessee or of the local laws and ordinances of the jurisdiction in which the Premises are located. Notwithstanding the provisions of this paragraph or any other paragraph of this Sublease, Tenant shall not keep, maintain or place upon the Premises any substance designated as or containing components designated as hazardous, dangerous, toxic or harmful and/or subject to regulation under any Federal, State or local law, regulation or ordinance. Tenant shall and does hereby agree to indemnify, defend and hold harmless Master Landlord and Landlord against any and all liability, claims or actions (including attorneys' fees and costs) arising from any violation of this paragraph and in the event of any such violation shall bear all costs of cleanup and removal of any substance required by Master Landlord and/or Landlord whether during the Term or after the expiration thereof.

24. **Limitation of Use.** Tenant will use the Premises solely for the Intended Use as a convenience store and gasoline station, and for no other purpose without the express written consent of Landlord, which consent Landlord may withhold without cause or explanation. In no event may the Premises be used for business related to gasoline and petroleum products.

25. **Default; Default Remedies.**

(a) It will be a default hereunder if (i) Tenant fails to pay any Rent, Additional Rent, or any other sums of money due under this Sublease of the Dealer Agreement by or on the due date thereof, (ii) Tenant fails to comply with any provision of this Sublease, Dealer Agreement, or any other agreement between Landlord and Tenant, (iii) the leasehold hereunder demised be taken on execution or other process of law in any action against Tenant, (iv) Tenant becomes insolvent or unable to pay its debts as they become due, or Tenant notifies Landlord that it anticipates either condition, (v) Tenant takes any action to, or notifies Landlord that Tenant intends to, file a petition under any Section or chapter of the National Bankruptcy Act, as amended, or under any similar law or statute of the United States of America or any State thereof, or a petition will be filed against Tenant under any such statute or Tenant or any creditor of Tenant notifies Landlord that it knows such a petition will be filed or Tenant notifies Landlord that it expects such a petition to be filed, (vi) a receiver or trustee is appointed for Tenant's leasehold interest in the Premises or for all or a substantial part of the assets of Tenant, (vii) Tenant does not use the Premises for the Intended Use for a period of fifteen (15) consecutive days, or (viii) Tenant abandons the Premises.

(b)     Remedies Upon Default. Upon the happening of any such event, Landlord will have the right, in addition to all remedies at law or equity, to:

(i)     enter upon the Premises, without process of law, without terminating this Sublease and do whatever Tenant is obligated to do under the terms of this Sublease (and Tenant agrees to reimburse Landlord on demand for any expenses which Landlord may incur in effecting compliance with Tenant's obligations under this Sublease and Tenant further agrees that Landlord will not be liable for any damages resulting to Tenant from such action).

(ii)    terminate this Sublease, resume possession of the Premises for its own account, and recover immediately from Tenant all Rent concessions under this Sublease and the difference between the Rent and the fair rental value of the Premises for the remainder of the Term, reduced to present worth.

(iii)   resume possession of the Premises and release or rent the Premises for the remainder of the Term, or portion thereof, on such terms and conditions as Landlord may elect, for the account of Tenant, and recover from Tenant immediately all Rent concessions under this Sublease and at the end of the Term or at the time each payment of Rent comes due under this Sublease as the Landlord may choose, the difference between the Rent and the rent received on the releasing or renting, net of any expenses associated with such re-leasing or renting, including, without limitation, decorating, repair expenses, and brokerage commissions, which expenses Tenant will pay to Landlord immediately upon demand.

Additionally, Landlord will also recover all expenses incurred by reason of the breach, including, without limitation, attorneys' fees and costs and paralegal expenses. If Tenant fails to perform any agreement of this Sublease, other than the agreement of the Tenant to pay Rent and Additional Rent, or otherwise breaches this Sublease for ten (10) days after a written notice specifying the performance required or the breach, Landlord may institute action in a court of competent jurisdiction to terminate this Sublease or to compel performance of the agreement or curing of the breach, and the prevailing party in that litigation will be paid by the non-prevailing party all expenses of such litigation, including, without limitation, attorneys' fees and costs and paralegal expenses; provided, however, that if the nature of the default is such that Tenant cannot cure the default within such ten (10) day period, then Tenant will be given such additional period of time as may be reasonably necessary so long as Tenant has then commenced and is thereafter diligently prosecuting the cure of such default.

Notwithstanding the foregoing, no notice period is required (a) in advance of termination of this Sublease by Landlord, at Landlord's sole discretion, if civil authorities cite Tenant or close down the Premises for violation of any criminal statute or health code, or (b) in advance of Landlord exercise of its rights under subparagraph (b)(i) of this Section, at Landlord's sole discretion, if the nature of Tenant's default, at Landlord's sole discretion, is such that the Pantry Premises would be adversely impacted were the default not remedied as soon as possible (e.g., Tenant's failure to maintain any grease trap used by Tenant).

(c)     Additional Security. As additional security for the performance of Tenant's obligations hereunder, Tenant hereby pledges and assigns to Landlord all the furniture, fixtures, goods, inventory, stock, chattels and other personal property of Landlord which are now or may hereafter be brought or put in the Premises, and further grants to Landlord a security interest therein under the Uniform Commercial Code as enacted in the State of Tennessee. Landlord is herein specifically granted all of the rights of a secured creditor under the Uniform Commercial Code as enacted in the State of Tennessee with respect to the property in which Landlord has been granted a security interest by Tenant, including the recording of all such security interests at the state and local levels.

(d)     Cross Default Provision. Any default by Tenant or an affiliate under any agreement between Landlord and Tenant or an affiliate shall constitute a default by Tenant under this Sublease, and any default by Tenant under this Sublease shall constitute a default by Tenant or an affiliate under any other agreement between Landlord and Tenant or an affiliate. In the event of either of the above-referenced

situations, Landlord shall be entitled to all of its remedies set forth in this Sublease and in all other agreements between Landlord and Tenant or an affiliate, respectively.

**26. Governing Law; Venue.** This Sublease will be governed by, construed, and enforced in accordance with the laws of the State of Tennessee. The agreed upon venue is Chattanooga, Hamilton County, Tennessee.

**27. Exercise of Rights and Notice.** The exercise of any right, privilege, duty or obligation of any party hereto or the giving of any notice permitted or required hereunder will be in writing and either (a) personally delivered, (b) mailed via certified or registered United States mail, postage prepaid, return receipt requested, or (c) forwarded via Federal Express or other reputable overnight courier, and in each case addressed to the other party at the following respective addresses:

To Landlord:  Circle K Stores Inc.
Attn: Real Estate Manager
108-B Debarry Avenue
Orange Park, Florida 32073

To Tenant:  Moe Shah
PO Box 475
Lebo, KS 66856-0475

With copy to:

Moe Shah
2728 Fauna Rd
Lebo, KS 66856-9300

or such future changed address of which notice has been given to the other party in writing in accordance with the above provision. Receipt of any notice will be deemed to have occurred (a) upon delivery when personally delivered, (b) three days after mailing when sent via United States certified or registered mail, and (c) one day after deposit with Federal Express or other reputable overnight courier. (d) Rejection or other refusal to accept, or the inability to deliver because of change of address of which no notice was given, shall be deemed to be receipt of the notice of demand or request. Any party shall have the right from time to time and at any time, upon at least ten (10) days' prior written notice thereof in accordance with provisions hereof, to change its respective address and to specify any other address within the United States of America; provided, however, notwithstanding anything herein contained to the contrary, in order for the notice of address change to be effective it must actually be received.

**28. Liability of Landlord.** The term "Landlord" as used in this Sublease means only the owner for the time being of the leasehold interest in the Premises created by the Master Lease so that in the event of any assignment of Landlord's interest under the Master Lease or an assignment of this Sublease by Landlord, or other demise of the Premises by Landlord, Landlord will be entirely freed and relieved of all future obligations of Landlord hereunder, and it will be deemed without further agreement between the parties that the assignee or lessee has assumed and agreed to perform all of the obligations of Landlord hereunder. The liability of Landlord to Tenant for any default by Landlord under the terms of this Sublease will be limited to the interest of Landlord in the Premises and Tenant agrees to look solely to Landlord's interest in the Premises for the recovery of any judgment from the Landlord, it being intended that Landlord will not be personally liable for any judgment or deficiency.

**29. Entry and Inspection.** Tenant will permit Landlord or Landlord's agents to enter the Premises at reasonable times and upon reasonable notice (except in the case of emergency, in which case no notice will be necessary or required) for the purpose of inspecting the Premises or showing the same to prospective tenants or purchasers, or for making necessary repairs, or for taking possession if Tenant has surrendered or abandoned the Premises, or as otherwise permitted by law.

30. **Signage.** Tenant will not erect, place, or maintain any signage on or about the Premises without the prior written approval of Landlord, which approval may be withheld without cause or explanation and at Landlord's sole discretion. Landlord reserves the right to require the size, placement, and appearance of Tenant's signage to be consistent with signage used in connection with any other improvements in the vicinity of the Premises owned or maintained by Landlord. Tenant will be responsible for the maintenance and upkeep of all signage approved by Landlord. In no event will Tenant be entitled to any signage that may be construed as being "off-site," would, in Landlord's sole discretion, adversely impact or change Landlord's signage on the Premises, as the same exists from time to time, would preclude Landlord from constructing or erecting its own signage or require Landlord to remove its own signage, or is otherwise not permissible, under any applicable law, ordinance, or rule. If any sign does not comply with any such requirements, Tenant, at its sole cost and expense, immediately will cause said sign to become in compliance or will remove the same. At or prior to expiration of the Term or termination of this Sublease, Tenant, upon Landlord's request, shall remove any exterior or interior signage which is a trademark, logo, or other identifying feature of Tenant or any of its affiliates or subsidiaries. Tenant, upon Landlord's request, shall remove facades or other architectural elements that might be construed as a trademark, logo, or other identifying feature of Tenant or any of its affiliates or subsidiaries. Tenant, at its own expense, promptly shall repair and restore the Premises to its condition immediately prior to the removal of such signage, façade, or architectural element.

31. **Relationship of Landlord and Tenant.** Nothing herein contained will be deemed or construed as creating the relationship of principal and agent or of partnership or joint venture between Landlord and Tenant, it being understood and agreed that neither the method of computing rent nor a provision contained herein nor any acts of the parties hereto will be deemed to create any relationship between the parties other than that of Landlord and Tenant.

32. **End of Tenancy; Holding Over.** Tenant will yield up the Premises immediately at the expiration of the Term or the earlier termination of this Sublease in as good and tenantable condition as was the Premises at the beginning of the Tenant's occupancy, reasonable wear and tear excepted. In the event of holding over by Tenant without Landlord's written consent, Tenant will pay rent equal to twice the Rent plus other sums due from time to time hereunder, including, without limitation, Additional Rent and Utilities. Possession by Tenant after the expiration of the Term or the termination of this Sublease will not be construed to extend the Term of this Sublease. Tenant will be responsible for all damages suffered by Landlord on account of any such holding over.

33. **Waiver of Subrogation.** Tenant hereby waives any and all rights of recovery, claim, action, or cause of action, against Landlord, its agents, officers, or employees, for any loss or damage that may occur to the Premises or any personal property thereon, by reason of fire, lightening, hurricane, wind, the elements, or any other cause, which loss or damage is then covered in whole or in part by insurance maintained or required to be maintained pursuant to this Sublease, regardless of cause or origin of such loss or damage, including negligence of the Landlord, its agents, officers, or employees. Tenant will obtain a waiver of subrogation endorsement for each of the policies for Insurance that Tenant is required to maintain under this Sublease.

34. **Waiver of Jury Trial.** In the event of a dispute arising out of or in any way connected with this Sublease, the relationship of Landlord and Tenant, Tenant's use or occupancy of the Premises, and/or claim of injury or damage resulting in litigation, (a) the expenses of the prevailing party, including, without limitation, attorneys' fees and costs at trial, on appeal, in bankruptcy proceedings or otherwise, will be paid by the non-prevailing party, and (b) LANDLORD AND TENANT KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE TRIAL BY JURY.

35. **No Brokers.** Tenant represents and warrants to Landlord that no party is entitled to a brokerage or leasing commission in connection with this Sublease or the Premises. Tenant shall and does hereby agree to indemnify, defend and hold harmless Landlord from and against any claim, liability or expense (including attorneys' fees and costs) arising from or in connection with a breach of this representation or warranty.

**36. Attorneys' Fees.** Tenant agrees that Tenant will pay, in addition to rents and other sums due under this Sublease all collection and court costs incurred by Landlord and Landlord's attorneys' fees and costs incurred for the enforcement of Landlord's rights under this Sublease. If suit be brought the prevailing party will be entitled to recover from the other the prevailing party's costs, including attorneys' fees and costs, whether such fees and costs be incurred at trial, on appeal, in bankruptcy proceedings or otherwise.

**37. "As Is" Condition.** It is agreed that Tenant has made an inspection of the Premises and accepts the same in its "AS IS, WHERE IS, WITH ALL FAULTS" condition. Landlord makes no representation or warranty as to the condition of the Premises, express or implied.

**38. Effective Date.** The term "Effective Date" as used herein will mean the date that this Sublease has been fully executed by Landlord and Tenant.

**39. Delivery of the Premises.** Tenant acknowledges that as of the Base Term Commencement Date Landlord has delivered to Tenant and Tenant has taken from Landlord possession of the Premises.

**40. Captions; Genders.** Captions used in this Sublease are for convenience of reference only and will not affect the construction of any provision of this Sublease. Whenever used, the singular will include the plural, the plural will include the singular, and gender will include all genders.

**41. Binding Effect.** The provisions of this Sublease will be binding on and inure to the benefit of the parties, their legal representatives, successors and permitted assigns. The provisions contained herein are solely for the benefit of Landlord and Tenant and their successor and assigns, and no third party rights are intended or created hereby

**42. Whole Agreement.** This Sublease contains all of the agreements and representations between the parties. None of the terms of this Sublease will be waived or modified to any extent, except by written instrument signed and delivered by both parties.

**43. Severability.** If any provision of this Sublease will be declared invalid or unenforceable, the remainder of this Sublease will continue in full force and effect.

**44. Counterparts.** This Sublease may be executed in one or more counterparts, each of which will be an original and all of which will constitute one and the same instrument.

**45. Recording of Sublease.** Except as herein provided, this Sublease will not be recorded. At the request of Landlord, Landlord and Tenant will execute a memorandum of this Sublease, in recordable form, specifying the commencement and termination dates, a description of the Premises, and any other provisions which Landlord may desire to incorporate therein.

**46. Force Majeure.** If either party be delayed or hindered in or prevented from the performance of any act required under this Sublease by reason of strikes, labor troubles, inability to procure materials, failure of power or other utilities, governmental moratorium or regulations, riots, insurrections, war, hurricane, tornado or other windstorm, flood, sinkhole or other subsidence, acts of God or other reason not the fault of the party delayed in performing the work or doing the acts required under the terms of this Sublease, then performance of such acts will be excused for the period of the delay, and the period for the performance of any such act will be extended for a period equivalent to the period of such delay.

**47. Time is of the Essence.** Time is of the essence for purposes of construing the terms and conditions of this Sublease.

**[SIGNATURES ON FOLLOWING PAGE]**

IN WITNESS WHEREOF, the parties hereto have executed this Sublease as of the day and year first above written

Signed and delivered in the presence of:

| Witnesses | Landlord: CIRCLE K STORES INC. |
|---|---|
| *David Fall* <br> Print Name: DAVID FALL | By *[signature]* <br> Print Name: Meredith W. Rice, Jr. <br> Its: Vice President |
| *Jay McDonald* <br> Print Name: Gay McDonald | Date: Feb. 24, 2017 |

| Witnesses | Tenant: PARADISE PETROLEUM LLC |
|---|---|
| _____ <br> Print Name: _____ | By *[signature]* <br> Print Name: Mehul Shah <br> Its: managing member |
| _____ <br> Print Name: _____ | Date: Feb 13th, 2017 |

Notary: *[signature]* Lauren D. Shelton

Commission Expires: 1-26-2019

*[Notary Seal: Lauren D. Shelton, State of Tennessee Notary Public, Hamilton County]*

## EXHIBIT "A"

### Description of the Premises

**2300 Jenkins Road**
**Chattanooga, TN**

All that tract or parcel of land lying and being in the City of Chattanooga, Hamilton County, Tennessee, being the same property conveyed by deed recorded in Book 4014, Page 830, in the Register's Office of Hamilton County, Tennessee, being more particularly described as follows Beginning at the point of intersection of the northern right of way of Shallowford Road and the eastern right of way of Jenkins Drive, thence along and with the eastern right of way of Jenkins Road North 20 degrees 22 minutes 60 seconds East 58 26 feet (cited as running North 20 degrees 23 minutes East 58 26 feet in prior deed) and continuing along a slight curve to the left having a radius of 4931 22 feet a distance of 141 52 feet to the southwestern corner of that property now or formerly own by David Panni, conveyed to Panni by deed recorded in Book 4451, Page 782, said Register's Office, thence leaving said right of way and running South 67 degrees 01 minutes 60 seconds East 208 20 feet along the southern boundary of Panni to a point in the western boundary of property now or formerly owned by James A and Marie P Lane, conveyed to them by deed recorded in Book 2681, Page 590, said Register's Office, thence South 19 degrees 17 minutes 32 second West 200 feet along the western boundary of Lane to a point in the northern right of way of Shallowford Road, thence North 67 degrees West 210 feet along the northern right of way of Shallowford Road to the POINT OF BEGINNING The foregoing description was taken from survey drawing no 99-506-3 dated July 16, 1999 made by David L Hopkins, TRS #120 of Hopkins Surveying Group, Inc , 241 Signal Mountain Road-Suite A, Chattanooga, TN 37405 Being improved property located at 2300 Jenkins Road, Chattanooga, TN, further identified as Tax Map Parcel No 149K-C-033 01

**EXHIBIT "B"**

## ELECTRONIC FUNDS TRANSFER AUTHORIZATION

_Paradise Petroleum LLC_ hereinafter called "We", located at _7227, Aventine way #102, Chattanooga TN_ hereby authorizes CIRCLE K STORES INC hereinafter called "CIRCLE K", to initiate debit entries to our bank account number _1000202752052_ at the depository named below, hereinafter called "Depository", which in turn shall debit the same to such account. These debit entries will be in the form of electronic debit.

**DEPOSITORY:**

INSTITUTION NAME: _Suntryst Bank_

ABA#: _061000046_

Branch:

Street Address: _1900 Gumbarrel Rd_

City/State/Zip: _Chattanooga, TN 37421_

Phone Number:

You are hereby authorized, as a convenience to me, to debit my account for drafts on my account by the WELLS FARGO BANK NA as agent for CIRCLE K with CIRCLE K STORES INC as payee, provided there are sufficient collected funds in such account to pay the same upon presentation. This authorization will remain in effect until revoked by me in writing, and you actually receive such notice I agree that you shall be fully protected in honoring any such draft.

This Authorization Agreement allows CIRCLE K to debit this account at frequent intervals for varying amounts. It is acknowledged and accepted that: CIRCLE K may debit my account on or after the due date defined by the terms of my lease and other agreements with CIRCLE K; **there will be a $50 charge for any draft returned unpaid by your depository.** By signing this form, I in no way relinquish any legal right to dispute any item. This authority is to remain in full force and effect until CIRCLE K and Depository have received written notification from me of its termination in such time and in such manner as to afford CIRCLE K and Depository a reasonable opportunity to act on it.

_Paradise Petroleum_
**CUSTOMER NAME**

_Mehul shah_
**AUTHORIZED NAME (PLEASE PRINT)**

_[signature]_
**AUTHORIZED SIGNATURE**

_managing member_
**TITLE**

DATE _2-21-17_

EMAIL ADDRESS FOR EFT NOTICES
_Paradise15KE@gmail.com_

PHONE NUMBER
_816 294 5633_

**COST CENTER NUMBER**

NOTE: PLEASE ATTACH A VOIDED CHECK FOR THE REFERENCED ACCOUNT IN ORDER TO ENSURE YOUR ACCOUNT IS PROPERLY AND ACCURATELY DEBITED.

17

3755 Sublease - Tri Star Properties, LLC

EXHIBIT "C"

REQUIRED W-9 FORM (PG 1)

| Form **W-9** (Rev. January 2011) Department of the Treasury Internal Revenue Service | Request for Taxpayer Identification Number and Certification | Give Form to the requester. Do not send to the IRS. |
|---|---|---|

Name (as shown on your income tax return): **Paradise Petroleum LLC**

Business name/disregarded entity name, if different from above:

Check appropriate box for federal tax classification (required):
- [ ] Individual/sole proprietor
- [ ] C Corporation
- [x] S Corporation
- [ ] Partnership
- [ ] Trust/estate
- [ ] Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶
- [ ] Other (see instructions) ▶
- [ ] Exempt payee

Address (number, street, and apt. or suite no.): **7227, Avemtine way #102**

City, state, and ZIP code: **Chattanooga, TN 37421**

Requester's name and address (optional):
**Circle K Stores Inc**
**1130 W Warner Rd Bldg B**
**Tempe, AZ 85284**

### Part I — Taxpayer Identification Number (TIN)

Employer identification number: **81-4241038**

### Part II — Certification

Sign Here: Signature of U.S. person ▶ [signed]    Date ▶ **2-21-17**

### General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

### Purpose of Form

A person who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),
2. Certify that you are not subject to backup withholding, or
3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income.

Note. If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:
- An individual who is a U.S. citizen or U.S. resident alien,
- A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States,
- An estate (other than a foreign estate), or
- A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax on any foreign partners' share of income from such business. Further, in certain cases where a Form W-9 has not been received, a partnership is required to presume that a partner is a foreign person, and pay the withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid withholding on your share of partnership income.

Cat. No. 10231X        Form **W-9** (Rev. 1-2011)

# EXHIBIT "D"

## Copy of Master Lease