# Exhibit Q

# FENNEMORE CRAIG
ATTORNEYS

John M. Pearce
Admitted in AZ, WA and NV
jpearce@fclaw.com

2394 East Camelback Road, Suite 600
Phoenix, AZ 85016-3429
PH (602) 916-5376 | FX (602) 916-5576
fennemorecraig.com

February 23, 2023

**FEDEX & EMAIL**

Richard C. Wagner, Esq.
Wagner & Weeks, PLLC
701 Market Street, Suite 310
Chattanooga, Tennessee 37402
rcw@wagnerinjury.com

Kaish, LLC
Attn: Akbar Bhamani
4858 Highway 58
Chattanooga, Tennessee 37416
Hopin7861@gmail.com

Akbar Bhamani
1260 Cresthaven Lane,
Lawrenceville, GA 30043

Re: **NOTICE OF DEFAULT AND TERMINATION**
- **FACILITY NO. 4213781 – 2300 JENKINS ROAD, CHATTANOOGA, TENNESSEE 37421**
- **FACILITY NO. 4213773 – 4011 RINGGOLD ROAD, CHATTANOOGA, TENNESSEE 37412**
- **FACILITY NO. 4213775 – 6960 LEE HIGHWAY, CHATTANOOGA, TENNESSEE 37421 (COLLECTIVELY, THE "FACILITIES")**

Mr. Bhamani, et al:

As you know, we represent Mac's Convenience Stores LLC ("Mac's") in connection with the above-referenced matter. We previously sent you letters on March 24, 2022, and July 25, 2022, with notices of default regarding the Facilities but received no response. We also copied your last known legal counsel pursuant to the Notice provisions in the Parties' contracts. We are copying that firm again although we have never heard from them and therefore question whether an active representation exists.

This correspondence is for the purpose of providing a final Notice of Default with 10-day opportunity to cure numerous material breaches and defaults by Kaish LLC ("Kaish") under the Complete Contract of Sale and accompanying agreements (collectively, the "Contract of Sale"),

and material breaches and defaults under the Sublease and accompanying agreements (collectively, the "Sublease") for each of the above-referenced Facilities. The specific breaches and defaults concerning each individual Facility are described below.

**If all breaches and defaults are not cured by Kaish within ten (10) calendar days after the date of this letter—by March 6, 2023, then Mac's will immediately thereafter exercise its right to terminate the Contract of Sale and Sublease on each of the three Facilities and exercise all rights of access to the properties, removal of property and equipment as needed, and other rights and remedies afforded under the Parties' agreements.**

### (1) Facility No. 4213781 – Jenkins Road

Kaish is in default under the Sublease for this Premises for numerous reasons, including the below. *See* Sublease, ¶ 25(a).

*First*, after the tornado event that occurred in Spring 2020, Kaish failed to promptly repair and restore the Premises[1] in material breach of the Sublease, ¶ 16. Specifically, in the event of a fire, casualty, or disaster during the Term, in the event that, as here, the Landlord chose not to terminate the Sublease at that time, Tenant (Kaish) "will promptly repair and restore the improvements located at or on the Premises, including, without limitation, the improvements, damaged or destroyed by such fire, casualty, or dispute to their condition immediately prior to such fire, casualty, or disaster….Tenant will commence repair and restoration as soon as reasonably possible and will diligently pursue the same until completion." *Id*. at ¶ 16; *see also* ¶ 9 (Tenant responsible for all repair and maintenance of the Premises). Despite help offered by Mac's and numerous forms of outreach,[2] Kaish has not completed the repairs and restoration that is necessary at the Premises to return it to the pre-tornado condition.

*Second*, Kaish is in further breach of the Sublease because it did not carry sufficient insurance on the Premises. Paragraph 14 of the Sublease requires Kaish to carry certain insurance, including the requirement in Paragraph 14(b) to have insurance "equal to the replacement cost of the Improvements on the Premises." *See also* Sublease, ¶ 14(c). Similarly, Paragraph 24 of the Contract of Sale requires Kaish to carry certain types and amounts of insurance, including Commercial/Comprehensive General Liability Insurance covering all operations at the Premises with a minimum property damage limit of $1,000,000 per occurrence and in the aggregate. Based upon information received by Mac's, Kaish did not carry insurance

---

[1] Unless specifically defined herein, capitalized terms in this letter shall have the same definition as in the Sublease or Contract of Sale, as applicable.

[2] For example, Mac's has provided both monetary and social networking assistance. During the weeks of March 30, 2020 through April 26, 2020, Mac's provided a $.03 cpg rebate on all volume purchased during the period. In addition, Mac's operations team introduced potential assignee candidates to Mr. Bhamani. Mac's also introduced Ascentium Capital to Mr. Bhamani to assist with funding for his canopy repair. Rent was even deferred at site 4213781 2300 Jenkins Road, Chattanooga, TN for twelve months.

sufficient to replace the improvements on the Premises, let alone the minimum coverage requirement of $1,000,000. This failure to be properly insured no doubt is inextricably connected to Kaish's failure to repair and restore the Premises after the casualty event.

*Third*, Kaish has failed to pay rent, taxes and other Franchise Program billings since the casualty. Sublease, ¶¶ 5, 8. The amount of overdue and unpaid rent and other charges is now in excess of $172,168.41. The Premises has been closed since the casualty event in Spring 2020 and never re-opened. Regardless of a casualty event, however, the Sublease remains in full force and effect and rent does not abate. *Id*. at ¶ 16. Mac's has reached out to you numerous times over the past year to resolve these issues, including to obtain the back rent and other amounts owed, with no response.

As a result of these breaches and failures, including failure to pay rent, failure to comply with any provision of the Sublease, Contract of Sale, or other agreements with Mac's, Kaish is in default under the Sublease. Sublease, ¶ 25(a)(i) and (ii). Furthermore, as the Premises has been shuttered since Spring 2020, Kaish is in further default of the Sublease because it has not used the Premises for its Intended Use for a period of fifteen (15) consecutive days and has abandoned the Premises. *Id*. at ¶ 25(a)(vii) and (viii). Indeed, Kaish has abandoned the Premises for two years.

Kaish is also in material breach of and default under the Contract of Sale for failing to buy from Mac's any (let alone the minimum required amount) of fuel required under that agreement for the past two years. *See* Contract of Sale, ¶¶ 3, 23(c). By abandoning the Premises, never repairing and re-opening the location, and failing to purchase any fuel during the last two years, Kaish has utterly repudiated the Contract of Sale.

Mac's therefore provides Kaish with a final Notice of Default and demand to cure the aforementioned breaches[3] within ten (10) days of this letter. If Kaish does not cure the aforementioned breaches within this time, Mac's will immediately terminate the Sublease and Contract of Sale and all related agreements.

Mac's will thereafter exercise all of its rights and remedies available to it under the respective agreements, including, without limitation, entry onto the Premises for the purpose of inspection and removal of any of Kaish's property that remains on the Premises and unclaimed three (3) days after termination, taking possession of the Premises, and pursuing all damages owed. *See* Sublease ¶¶ 17, 25(b), 29. Damages include, but are not limited to, costs to repair and restore the Premises, back rent, taxes, and other program fees owed (*see* Sublease, ¶¶ 5, 8, 9, 16),

---

[3] The Security and Cross Default Agreement also provides that all agreements between the Parties, including the Contract of Sale and all other agreements and documents executed in connection with the Contract of Sale (as it may be amended) are considered Related Agreements and part of a single transaction. Any default under the Security and Cross Default Agreement or any of the Related Agreements shall be a default pertaining to all Properties and Related Agreements. *See* Security and Cross Default Agreement, § 2. *See also* Cross Default provision in Sublease, ¶ 25(d).

lost fuel sales, and liquidated damages authorized under Paragraph 23(h) of the Contract of Sale. Mac's also reserves its right to pursue all available legal and equitable remedies against Kaish and to pursue litigation to recover its damages, including its attorneys' fees and costs. *See* Sublease, ¶¶ 25(b), 36; Contract of Sale ¶ 34.

### (2) Facility No. 4213773 – Ringgold Road

Kaish is also in default under the Sublease and Contract of Sale for this Premises. *See* Sublease, ¶ 25(a); Contract of Sale, ¶¶ 3(a), 23(c). Kaish has closed this Premises since January 1, 2022, and since that time has failed to purchase any fuel from Mac's or to pay rent, taxes, and other program fees required. These actions constitute material breaches of the Contract of Sale and Sublease as the applicable provisions are described in detail above.[4]

The amount of overdue and unpaid rent and other charges at this location is now in excess of $72,928.89. Critically, Kaish has abandoned the Premises for more than one year and repudiated the Parties' agreements.

Kaish's breaches, failure to pay rent and other amounts owed, total abandonment of the Premises, and repudiation of the Parties' agreements entitles Mac's to immediately terminate the Sublease, Contract of Sale, and all related agreements and pursue all available legal and equitable remedies, including entry on the Premises and removal of equipment and other property if Kaish does not cure the aforementioned breaches within ten (10) days of this letter.

If Kaish fails to timely cure the material breaches described herein and, as a result, Mac's thereafter terminates the Sublease, Contract of Sale, and related agreements before the end of the Sublease Term, the Sublease requires Kaish to "remove or cause to be removed all of [Kaish's] personal property, trade or other fixtures, and equipment (including, but not limited to, all underground storage tanks and related piping) from the Premises by or at [Kaish's] expense … ***within three (3) days after the … termination of this Sublease.***" Sublease, ¶ 17.

Accordingly, should Kaish not timely cure the aforementioned breaches, leading to Mac's subsequent and immediate termination of the Sublease, Contract of Sale and all related agreements, Kaish shall remove all property, fixtures, and equipment (as described above and in the Sublease and specifically including the underground storage tanks and related piping) within three (3) days after the 10-day breach period has expired and the agreements are considered to be terminated.

---

[4] The Contract of Sale and Sublease, as well as accompanying assignments and agreements, for each of the Facilities are substantively the same.

Any items left on the Premises three days after the Sublease termination are considered abandoned.[5] Mac's may then, in its sole discretion, retain the abandoned property for its benefit, remove and dispose of the abandoned property, deliver the abandoned property to Kaish, or store the abandoned property for the benefit of Kaish at Kaish's expense. Sublease, ¶ 17; *see also* ¶ 29 (entry and inspection right). Upon demand by Mac's, Kaish shall also pay Mac's for the cost of removal and disposal, delivery, and/or storage of such property, fixtures, and equipment. *Id*. at ¶ 17.

Most notably, in the event of termination for Kaish's failure to cure the aforementioned breaches, Mac's intends to access the Premises and itself, or using a third party, remove all of the fuel equipment (including, but not limited to, underground tanks and related piping). Under applicable law, the fuel equipment is required to be removed after one year of non-use. Since Kaish abandoned the Premises over a year ago, it is critical to move forward expeditiously with fuel equipment removal. Mac's is getting bids now for the removal and will let Kaish know when it has selected a vendor and is ready to commence with the removal. Mac's has its own obligations to the Master Landlord under the Master Lease regarding removal of equipment, including fuel equipment, and will thus move forward to complete the removal promptly since Kaish has abandoned the Premises. In its discretion, Mac's may seek to recover the costs of removal from Kaish as permitted under the Sublease. *See* ¶ 17.

For the avoidance of any doubt, in the event of termination for Kaish's failure to cure the aforementioned breaches, Mac's will promptly access the Premises and remove all of the fuel equipment, which it is expressly permitted to do under the Sublease since that property has been abandoned for more than a year. If Kaish has any objection to this or would like to discuss further, please respond immediately to this letter to discuss this issue. Failure to respond or raise any objection will be deemed to be Kaish's agreement that Mac may enter the Premises and remove all fuel equipment as required by law.

If the above-described breaches are not timely cured and this matter not resolved to Mac's satisfaction, Mac's will exercise all of its available legal and equitable remedies, including, without limitation, entry onto the Premises for the purpose of inspection and removal of any of Kaish's property that remains on the Premises and unclaimed three (3) days after termination (including but not limited to all fuel equipment), taking possession of the Premises, and pursuing all damages owed. *See* Sublease ¶¶ 17, 25(b), 29. Damages include, but are not limited to, cost of removing or otherwise dealing with property, fixtures and equipment on the Premises (including fuel equipment), back rent, taxes, and other program fees owed (*see* Sublease, ¶¶ 5, 8, 9, 16), lost fuel sales, and liquidated damages authorized under Paragraph 23(h) of the Contract of Sale. Mac's also reserves its right to pursue all available legal and equitable remedies against Kaish and to pursue litigation to recover its damages, including its attorneys' fees and costs. *See* Sublease, ¶¶ 25(b), 36; Contract of Sale ¶ 34.

---

[5] The Premises and all property on it are already considered to be abandoned as Kaish has shuttered the Premises for over a year.

### **(3) Facility No. 4213775 – Lee Highway**

Kaish is also in default under the Sublease and Contract of Sale for this Premises. *See* Sublease, ¶ 25(a); Contract of Sale, ¶¶ 3(a), 23(c). More particularly, Kaish has not purchased any fuel from Mac's as required under the Contract of Sale since September 2022, and has recently upon information and belief abandoned occupancy, thereby repudiating the Contract of Sale. Kaish also owes back rent, taxes, and other program fees in the current estimated amount of $31,259.54.

If these breaches are not cured within ten (10) days of this letter, Mac's will proceed to immediately terminate the Sublease, Contract of Sale and all related agreements with Kaish. Mac's will also then exercise all of its available legal and equitable remedies, including, without limitation, entry onto the Premises for the purpose of inspection and removal of any of Kaish's property that remains on the Premises and unclaimed three (3) days after termination, taking possession of the Premises, and pursuing all damages owed. *See* Sublease ¶¶ 17, 25(b), 29. Damages include costs to repair and restore the Premises, back rent, taxes, and other program fees owed (*see* Sublease, ¶¶ 5, 8, 9, 16), lost fuel sales, and liquidated damages authorized under Paragraph 23(h) of the Contract of Sale. Mac's also reserves its right to pursue all available legal and equitable remedies against Kaish and to pursue litigation to recover its damages, including its attorneys' fees and costs. *See* Sublease, ¶¶ 25(b), 36; Contract of Sale ¶ 34.

Mr. Bhamani is a guarantor of all Kaish's obligations with respect to all three Facilities. Specifically, in connection with the Contract of Sale, Akbar Bhamani, signed and executed a Personal Guaranty of, amongst other things, the obligations contained in the Subleases and Contracts of Sale, and granted Mac's security interests in Kaish's equipment, fixtures, and contract rights to secure the performance of any and all obligations arising from not only the Contract of Sale, but any agreement or contract Kaish entered into with Mac's. *See* Security Agreement for each Premises, ¶ 1.

Kaish is also in default under the Security Agreement. *Id*. at ¶ 8(a) (nonpayment of any Obligations secured or failure to perform any duty or Obligation). If such default is not cured within ten (10) days of this letter, Mac's may exercise all of its rights and remedies available, including under Paragraph 9 of the Security Agreement, and at law or in equity.

This letter is your final chance for Kaish and Mr. Bhamani to cure the numerous material breaches discussed in this letter, which render Kaish in default at all Facilities. If Kaish fails to timely, within ten (10) days from the date of this letter, cure the breaches, including, without limitation, by paying the overdue back rent and other amounts owed at all Facilities, taking the action required to restore the damaged Facility No. 4213781, and re-commencing fuel purchases at Facility No. 4213775, then the Subleases, Contracts of Sale, and related agreements for all Facilities will be terminated effective ten (10) days from this letter—on March 6, 2023. Upon termination, Mac's will exercise all available remedies that include, as appropriate and

necessary, entry upon the respective Premises, possession and/or removal of property, fixtures, and equipment, and commencing litigation to recover all amounts owed.

For the avoidance of doubt, this Notice and Demand should not be construed as limiting Mac's damages in any way. Mac's assures you that if forced to litigate this matter Mac's will pursue compensation for all damages it has incurred and to which it is entitled to under the Contract, the ancillary agreements thereto, and/or applicable law. Mac's hereby reserves all rights and remedies under the Contract and the ancillary agreements, as well as at law and equity, and without limitation, Mac's will be exercising its rights to pursue and collect all damages resulting from Kaish's defaults.

Very truly yours,

FENNEMORE CRAIG

John Pearce

cc: Daniel A. Robinson, Esq.
Head of Litigation
Circle K Stores Inc.