# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION

<table>
<tr>
<td>

**MAC'S CONVENIENCE STORES LLC,**
**a Delaware limited liability company,**

      **Plaintiff,**

**v.**

**KAISH LLC, a Tennessee limited liability**
**company, and AKBAR BHAMANI, an**
**individual,**

      **Defendants.**

</td>
<td>

**Civil Action No. 1:23-cv-00284**

</td>
</tr>
</table>

---

## RESPONSE TO ORDER TO SHOW CAUSE AND
## MOTION FOR ENTRY OF DEFAULT JUDGMENT

---

Pursuant to Federal Rule of Civil Procedure 55(b)(2), Plaintiff Mac's Convenience Stores LLC ("Mac's") hereby requests the entry of default judgment against Kaish LLC ("Kaish") and Akbar Bhamani ("Bhamani") (collectively, "Defendants"). This Motion is supported by the Memorandum of Points and Authorities, Sum Certain Affidavit of Andrea L. Marconi in Support of Motion for Entry of Default Judgment ("Sum Certain Aff."), attached as **Exhibit A**, Affidavit of Andrea L. Marconi in Support of Request for Attorneys' Fees ("Fee Aff."), attached as **Exhibit B**, separately filed Bill of Costs with exhibits, Proposed Default Judgment lodged herewith, and all relevant pleadings and papers on file in this matter.

Mac's has received the Court's May 10, 2025 Order to Show Cause [Doc. 39]. Mac's apologizes for any delay in filing this motion. There were some timing issues arising out of counsel's schedule constraints, among other things. It also took substantial time to review and synthesize the year plus of litigation prior to Defendants' withdrawal of counsel into the motions filed today. Mac's believes that this motion and accompanying papers show appropriate cause why this case should not be dismissed but, rather, default judgment entered against Defendants.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    <u>INTRODUCTION</u>

On March 28, 2025, the Clerk of this Court entered default against Defendants based upon Defendants' failure to defend this action.[1] [Doc. 38]. By this Motion, Mac's hereby seeks entry of default judgment on its Complaint, including Count 1: Breach of Contract against Kaish, and Count 2: Breach of Guaranty against Bhamani, as follows:

- Awarding Mac's monetary damages in the total amount of **$604,417.75**, encompassing the following:
  - Sum certain monetary damages in the amount of **$272,894.29** under the Jenkins

---

[1] Mac's is also simultaneously filing a Motion to Dismiss Defendants' Counterclaims pursuant to Federal Rule of Civil Procedure 41(b) for Defendants' failure to prosecute their Counterclaims.

1

Sublease and the Jenkins Dealer Agreement—**$200,489.61** in unpaid rent, taxes, fees, and other amounts owed, and **$72,404.68** in costs to remove underground storage tanks after the property was closed.

- Sum certain monetary damages in the amount of **$192,244.82** under the Ringgold Sublease and the Ringgold Dealer Agreement—**109,268.24** in unpaid rent, taxes, fees, and other amounts owed, and **$82,976.58** costs to remove underground storage tanks after the property was closed.

- Sum certain monetary damages in the amount of **$139,278.64** under the Lee Highway Sublease and the Lee Highway Dealer Agreement—**$64,407.04** in unpaid rent, taxes, fees, and other amounts owed, and **$74,871.60** costs to remove underground storage tanks after the property was closed.

- Taxable costs in the amount of **$755.00** pursuant to the applicable contract provisions and law.

- Attorneys' fees in the amount of **$140,488.50** pursuant to the applicable contract provisions and Tennessee law.

- Pre-judgment interest at the rate of **10%** from the respective dates of breach.

- Post-judgment interest from the date of judgment at the Board of Governors of the Federal Reserve System rate for the week preceding judgment. As of filing, the weekly average was **4.01%**.

As supported by this Motion, the Sum Certain Aff., and the Fee Aff., Mac's requests entry of default judgment in the total amount of **$745,661.25**, before application of pre- and post-judgment interest.

## II.   STATEMENT OF FACTS

### A.   The Master Lease.

On October 13, 2003, R1 TN 1, LLC ("R1 TN 1") and The Pantry, Inc. ("The Pantry") entered into a Lease Agreement (the "Master Lease"), under which The Pantry leased certain real property from R1 TN 1. [Compl., Doc. 1, ¶ 9]. The term commenced on October 16, 2003, and expired on October 31, 2023. [*Id.* at ¶ 10]. The Master Lease applied to multiple leased premises, including the following gas stations and convenience stores in Chattanooga, Tennessee: (1) 4011 Ringgold Road ("Ringgold Premises"); (2) 6960 Lee Highway ("Lee Highway Premises"); and

2

(3) 2300 Jenkins Road ("Jenkins Premises") (collectively, the "Premises"). [*Id.* at ¶ 11]. On September 14, 2015, The Pantry merged into Circle K Stores, Inc. ("Circle K"), and Circle K became the holder of the tenant-interest in the Master Lease concerning the Premises. [*Id.* at ¶ 12].

### B.    The Subleases and Defendants' Breaches.

On February 13, 2017, Circle K entered into three separate sublease agreements for the Ringgold Premises ("Ringgold Sublease"), Lee Highway Premises ("Lee Highway Sublease"), and Jenkins Premises ("Jenkins Sublease") (collectively, the "Subleases"). [*Id.* at ¶ 13], which are substantially the same. Circle K subleased each of the three Premises to Paradise Petroleum LLC ("Paradise Petroleum"). [*Id.* at ¶ 15, Exs. A-C]. The effective term of each of the Subleases ("Sublease Terms") was from February 13, 2017 to August 31, 2023. [*Id.* at ¶ 16]. On March 15, 2017, Circle K assigned to Mac's all of its rights, title and interests under the Master Lease and the Subleases. [*Id.* at ¶ 17].

On September 16, 2019, Mac's, Paradise Petroleum, and Kaish entered into three separate Assignment and Assumption of Subleases with Consent relating to the Ringgold Sublease ("Ringgold Sublease Assignment"), Lee Highway Sublease ("Lee Highway Sublease Assignment"), and Jenkins Sublease ("Jenkins Sublease Assignment") (collectively, the "Sublease Assignments"). [*Id.* at ¶ 18]. Under the terms of the Sublease Assignments, Paradise Petroleum assigned all of its rights and obligations under the Subleases to Kaish. [*Id.* at ¶ 19, Exs. D-F].

The Subleases require Kaish to pay Mac's rent in monthly installments, all of which increased after the initial term as described in the Master Lease: (i) Jenkins Sublease initial annual rent of $48,278.88 in monthly installments of $4,023.24 through October 18, 2018, (ii) Ringgold Sublease initial annual rent of $58,892.40 in monthly installments of $4,907.70 through October 31, 2018, (iii) Lee Highway Sublease initial annual rent of $46,242.36 in monthly installments of $3,853.53 through October 31, 2018. [*Id.* at ¶¶ 22-25]. The Subleases also required Kaish to pay

3

additional rent, late charges, sales taxes, and other program fees. [*Id.*].

The following, among other things, constitute defaults under the Subleases: (i) failure to pay rent, additional rent, taxes, or any other sums of money due under the Subleases or the Dealer Agreements (described below); (ii) failure to comply with any provisions of the Subleases, the Dealer Agreements, or any other agreement between Mac's as the landlord and Kaish as the tenant; (iii) failure to use the Premises for their intended use for a period of fifteen consecutive days; or (iv) Kaish's abandonment of the Premises. [*Id*. at ¶ 34].

In the event of Kaish's default under any of the Subleases, in addition to all remedies available at law or in equity, Mac's is entitled to: (i) enter the Premises, without process of law and without terminating the Subleases, to do whatever Kaish is obligated to do under the Subleases; (ii) terminate the Subleases and resume possession of the Premises, and recover immediately from Kaish all rent concessions under the Subleases and the difference between the rent and the fair rental value of the Premises for the remainder of the Term, reduced to present worth; or (iii) resume possession of and re-rent the Premises. If Mac's opts for option (i), Kaish shall reimburse Mac's for any expenses incurred to effect compliance with Kaish's obligations under the Sublease. [*Id*. at ¶ 35]. In the event of Kaish's default under the Subleases, Mac's is also entitled to recover all expenses, including attorneys' fees. [*Id*. at ¶ 36].

Upon termination of the Subleases, Kaish is also required to remove its personal property, trade, or other fixtures and equipment within three days of termination. [*Id*. at ¶ 37]. Mac's is also permitted, in its sole discretion, to retain abandoned property for its sole benefit (leaving such property at the Premises or removing it), remove abandoned property and dispose of it, deliver abandoned property to Kaish, or store abandoned property for the benefit of Kaish at Kaish's sole expense. [*Id*. at ¶ 38]. Kaish is also required to pay Mac's, immediately upon demand, the cost of the removal and disposal, delivery, and/or storage of such abandoned property. [*Id*. at ¶ 38].

### C. __The Dealer Agreements.__

On March 24, 2017, Mac's and Paradise Petroleum entered into three separate Complete Contracts of Sale for the Ringgold Premises ("Ringgold Dealer Agreement"), Lee Highway Premises ("Lee Highway Dealer Agreement"), and Jenkins Premises ("Jenkins Dealer Agreement") (collectively, "Dealer Agreements"). [*Id*. at ¶ 39, Exs. G-I]. The effective term of the Dealer Agreements ("Dealer Agreement Term"), after subsequently signed addendums, was: (i) Ringgold Dealer Agreement, April 10, 2017 to April 9, 2027; (ii) Lee Highway Dealer Agreement, April 6, 2017 to April 5, 2027, and (iii) Jenkins Dealer Agreement, April 13, 2017 to April 12, 2027. [*Id*. at ¶ 42]. On August 14, 2019, Mac's, Paradise Petroleum, and Kaish entered into three separate Assignment and Assumption Agreements relating to the Ringgold Dealer Agreement ("Ringgold Dealer Agreement Assignment"), the Lee Highway Dealer Agreement ("Lee Highway Dealer Agreement Assignment"), and the Jenkins Dealer Agreement ("Jenkins Dealer Agreement Assignment") (collectively, "Dealer Agreement Assignments"). [*Id*. at ¶ 43, Exs. J-L].

Under the terms of the Dealer Agreement Assignments, which are substantially the same, Paradise Petroleum assigned all of its rights and obligations under the Dealer Agreements to Kaish, and Kaish agreed to assume all of Paradise Petroleum's rights under the Dealer Agreements. [*Id*. at ¶ 44]. Mac's, Paradise Petroleum, and Kaish subsequently signed amendments modifying the effective term of the Lee Highway Dealer Agreement Assignment and the Jenkins Dealer Agreement Assignment to September 16, 2019, and the Ringgold Dealer Agreement Assignment to October 29, 2019. [*Id*. at ¶ 45].

The Dealer Agreements provide that Mac's would be the exclusive supplier of Kaish's motor fuel product requirements, and require Kaish to purchase from Mac's certain minimum quantities of fuel at each of the Premises. [*Id*. at ¶¶ 46-47]. The Dealer Agreements also require Kaish to carry certain insurance covering all operations at the Premises that names Mac's as an

5

additional insured. [*Id*. at ¶ 49].

The Dealer Agreements provide that Mac's may terminate them for numerous reasons, including the following: (i) if Kaish fails to purchase at least 75% of the minimum volume requirements in the Commodity Schedules; (ii) if Kaish fails to maintain an inventory of any one or more grades of motor fuel covered by the agreements in an amount adequate to meet customer demand; and (iii) any grounds under which termination of a franchise is permitted under the provisions of the Petroleum Marketing Practices Act, which include, among other things, failure to pay the fuel supplier amounts to which it is legally entitled and failure to operate the Premises for seven consecutive days. [*Id*. at ¶ 50].

The Dealer Agreements further provide that, in a suit for breach of the agreements, the prevailing party shall be entitled to its attorneys' fees. [*Id*. at ¶ 51]. Termination of the Dealer Agreements "shall not prejudice [Mac's] right to seek monetary damages or equitable relief against [Kaish]." [*Id*.].

### D.    **The Personal Guaranties.**

On August 7, 2019, Bhamani and Mac's entered into three separate Personal Guaranties of Performance relating to each of the Premises (collectively, "Guaranties"). [*Id*. at ¶ 57, Exs. N-P]. Under the Guaranties, Bhamani agreed to fully, unconditionally, and irrevocably guarantee the full and prompt payment of Kaish's liabilities under the Dealer Agreements and Subleases. [*Id*. at ¶ 58]. Bhamani also agreed that, if Kaish failed at any time to make any part of the payments owed or perform its obligations under, among other things, the Dealer Agreements, he would pay or perform the liabilities guaranteed as his direct and primary obligation. [*Id*. at ¶¶ 58-59].

Bhamani, as guarantor, also agreed to pay Mac's all costs, including attorneys' fees, in collection of Kaish's liabilities (as defined in the Guaranties) and any obligations of Bhamani under the Guaranties. [*Id*. at ¶ 60]. Furthermore, the prevailing party is entitled to all costs,

including attorneys' fees, under the Guaranties or to enforce their terms. [*Id*.]. Bhamani's obligations additionally extended to Kaish's liabilities under the Subleases, including pursuant to the Cross Default Agreement and the Cross Default Provision in the Subleases. [*Id*., Exs. A-C].

### E. <u>Jenkins Premises.</u>

As described in the Complaint, in approximately April 2020, a tornado event occurred that significantly damaged the Jenkins Premises. After the tornado event, Kaish failed to promptly repair and restore the Premises in material breach of its obligations under the Jenkins Sublease. This was despite help offered by Mac's. [*Id*. at ¶¶ 62-65].

Kaish did not carry insurance sufficient to replace the Premises improvements or meeting the minimum coverage requirements of the Jenkins Sublease and Jenkins Dealer Agreement. [*Id*. at ¶¶ 66, 71]. The Jenkins Premises has been closed since the casualty event in April 2020. Kaish has failed to pay rent, taxes, and other amounts due to Mac's under the Jenkins Sublease since then. [*Id*. at ¶ 67]. Also, since the property has been closed, Kaish has not purchased any fuel for the Jenkins Premises for many years. [*Id*. at ¶ 70].

As a result, Kaish has defaulted under the Jenkins Sublease and the Jenkins Dealer Agreement, causing Mac's to suffer damages of (a) unpaid rent, taxes, fees, and other amounts owed of $200,489.61, and (b) costs to remove the underground storage tanks after the property was closed of $72,404.68, for a total of $272,894.29. [*Id*. at ¶¶ 68-69, 72-73].

### F. <u>Ringgold Premises.</u>

Kaish closed the Ringgold Premises around January 1, 2022. Since the Ringgold Premises closed around January 1, 2022, Kaish has failed to pay rent, taxes, fees, and other amounts due to Mac's under the Ringgold Sublease. As a result, Kaish has defaulted under and is in material breach of the Ringgold Sublease. [*Id*. at ¶¶ 74-76]. Moreover, since the property closed, Kaish has not purchased any fuel for the premise for many years and is in breach of the Ringgold Dealer

7

Agreement. [*Id.* at ¶¶ 78-79]. Kaish's default under the Ringgold Road Sublease and the Ringgold Dealer Agreement caused Mac's to suffer damages of (a) unpaid rent, taxes, fees, and other amounts owed of $109,268.24, and (b) costs to remove the underground storage tanks after the property was closed of $82,976.58, for a total of $192,244.82. [*Id.* at ¶ 80].

### G.     Lee Highway Premises

Kaish closed the Lee Highway Premises around September 2022. Kaish has failed to pay rent, taxes, fees, and other amounts due to Mac's under the Lee Highway Sublease since September 2022. As a result, Kaish has defaulted under the Lee Highway Sublease. [*Id.* at ¶¶ 81-83]. Moreover, since the property closed, Kaish has not purchased any fuel for the premise for many years and is in breach of the Lee Highway Dealer Agreement. [*Id.* at ¶¶ 85-86]. Kaish's default under the Lee Highway Sublease and the Lee Highway Dealer Agreement caused Mac's to suffer damages of (a) unpaid rent, taxes, fees, and other amounts owed of $64,407.04, and (b) costs to remove the underground storage tanks after the property was closed of $74,871.60, for a total of $139,278.64. [*Id.* at ¶ 87].

Despite notice and demand, Kaish failed to cure its breaches. [*Id.* at ¶¶ 88-90]. Bhamani also never paid the amounts owed by Kaish under the Subleases and the Dealer Agreements or fulfilled any of Kaish's performance obligations as required by the Guaranties. [*Id.* at ¶ 91].

### III.     LEGAL ARGUMENT

### A.     Legal Standard.

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Under Federal Rule of Civil Procedure 55(b)(2), "[i]n all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Because Defendants previously appeared in this action, Mac's applies to the Court for entry of

8

default judgment pursuant to Rule 55(b)(2).

Mac's has met the conditions necessary for entry of default judgment. Neither Defendants are infants. *See* Sum Certain Aff., ¶ 30. Also, based on the best knowledge and information, neither of the Defendants is incompetent or a member of the military. *Id*. The Clerk entered default against Defendants on March 28, 2025. *Id*. at ¶ 29; [Doc. 28]. Mac's has also complied with the notice requirements of Rule 55(b)(2) by serving copies of these papers on Defendants using the addresses provided when their counsel withdrew. Sum Certain Aff., ¶ 31. All prerequisites for entry of default judgment have been satisfied and an entry of judgment is appropriate.

### B.   <u>Default Was Entered Against Defendants.</u>

Mac's filed its Complaint on December 4, 2023. [Doc. 1]. Mac's then diligently attempted to personally serve Defendants at least four times, but was unsuccessful. Based on communications with the process server company, Mac's believed that Defendants were potentially avoiding service. Sum Certain Aff., ¶ 6. Defendants finally executed an Acknowledgement of Service on February 29, 2024, filed March 1, 2024, acknowledging that Kaish was served with the Complaint via certified mail on February 26, 2024, and Bhamani was served with the Complaint via certified mail on February 22, 2024. [Doc. 18]; *see also* Sum Certain Aff., ¶ 7.

Defendants initially retained counsel and appeared in this case by filing an Answer and Counterclaim on April 3, 2024. [Doc. 19]. Defendants later filed an Amended Counterclaim on May 7, 2024 [Doc. 24]; Sum Certain Aff., ¶ 12. Thereafter, Defendants participated some in the litigation, including serving initial disclosures, preparing a joint case report, responding to written discovery, and participating in mediation, but since then have subsequently failed to "otherwise defend" such that default is required under Rule 55(a). Sum Certain Aff., ¶ 13; *Oakworth Capital Bank v. 6101 Sligo*, LLC, 3:23-CV-01144, 2024 WL 3440246, at *4-*5 (M.D. Tenn. Apr. 1, 2024) ("otherwise defend" as construed under Rule 55 presumes "inaction that evinces a failure to

9

defend" even when after answering).

After mediation was unsuccessful, on January 6, 2025, Defendants' then-counsel filed a Motion to Withdraw as counsel, which was granted after a hearing held on January 24, 2025, at which counsel for Mac's appeared, then-counsel for Defendants, and Bhamani. [Doc. 31]. On January 24, 2025, the Court entered an Order granting counsel's request to withdraw as counsel for Defendants and ordering Defendants to, within 30 days of the Order, "have a new attorney enter an appearance on behalf of Defendants **OR** . . . inform the Court in writing that [Bhamani] intends to represent himself." [*See* Doc. 33 at 1 (emphasis in original)]. The Court informed Defendants that, as an LLC, Kaish cannot represent itself. [*Id.* at 1 n.1]. The Court further stated, "Defendants are hereby placed on notice that failure to comply with this Court's Order may result in a default judgment being entered against them pursuant to Fed. R. Civ. P. 55." [*Id.* at 2]. The Court's Order followed a hearing at which Mac's counsel, Defendants' then-counsel, and Bhamani were present. At the hearing, the Court provided substantially similar instructions to Bhamani, on behalf of Defendants, on the record, including that Kaish could not represent itself and the warning that failure to comply with the Order may result in default judgment being entered. *See* Sum Certain Aff., ¶ 20. The Court also mailed the Order to Defendants at the addresses they provided the Court upon their counsels' withdrawal. [Doc. 33 at 2]; Sum Certain Aff., ¶ 21.

Defendants' deadline to comply with the Court's Order passed on February 21, 2025. Sum Certain Aff., ¶ 22. To date, Defendants have not had a new attorney enter an appearance on their behalf or inform the Court in writing that Bhamani intends to represent himself as required by the Court's Order. Defendants also have not sought any extension of time to comply with the Court's Order. *Id.* at ¶ 23. Based on their failure to comply with the Court's Order, failure to obtain counsel to represent Kaish, and other inaction, Defendants have failed to "otherwise defend" this action. *See, e.g.*, *Brittney Gobble Photography, LLC v. Wenn Ltd.*, No. 3:16-CV-306-HSM-DCP, 2019

10

WL 2446997, at *5 (E.D. Tenn. Feb. 19, 2019) (recommending entry of default judgment against defendants who did not obtain substitute counsel, stopped participating in discovery, and failed to respond to plaintiff's requests for entry of default and default judgment), *report and recommendation adopted*, No. 3:16-CV-306-HSM-DCP, 2019 WL 1125644, at *2 (E.D.Tenn. Mar. 12, 2019); *GCIU-Employer Ret. Fund v. Amerigraph, LLC*, No. 2:06-CV-1072, 2008 WL 762082, at *1 (S.D. Ohio Mar. 20, 2008) (granting default judgment against corporate defendant after counsel withdrew and defendant did not obtain new counsel).

After failing to obtain new counsel, Defendants also stopped participating in discovery, despite the fact that there were numerous impending Scheduling Order deadlines. [Doc. 22]; Sum Certain Aff., ¶ 24. Based on Defendants' failure to defend the case and failure to comply with the Court's Order to have a new attorney appointed to represent Kaish or for Bhamani to inform the Court Bhamani intends to represent himself, Mac's filed an Application for Entry of Default on March 7, 2025. [Doc. 34]. Copies of the Application were sent via FEDEX overnight on March 12, 2025, to both addresses that Defendants provided when their counsel withdraw, with delivery confirmed on March 13, 2025. Sum Certain Aff., ¶ 26. Mac's filed a Certificate of Service with the Court on March 13, 2025. [Doc. 36]. The Clerk entered default against Defendants on March 28, 2025. [Doc. 38].

## C.     The Court Should Enter Default Judgment Against Defendants.

Pursuant to Federal Rule of Civil Procedure 55(b)(2), following entry of default against a defendant that has appeared, the plaintiff must apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2). Upon entry of default, the factual allegations of the complaint, except those relating to the amount of damages, are deemed true. *Culp v. U.S. Star 39, LLC*, No. 1:20-CV-137, 2021 WL 6328371 at *1 (E.D. Tenn. Feb. 25, 2021) ("Following the Clerk's entry of default pursuant to Rule 55(a) and the plaintiff's application for default judgment under Rule 55(b), the

11

complaint's factual allegations regarding liability are taken as true, while allegations regarding damages must be proven."); *see also Brittney Gobble Photography, LLC*, 2019 WL 1125644, at *5 ("Once the Clerk has entered a default against a defendant, the Court must treat all well-pleaded allegations in the Complaint as true."). Here, the relevant facts are as follows:

- The Subleases, Dealer Agreements, and Cross Default Agreement are valid and enforceable contracts between Mac's and Kaish, [Doc. 1 at ¶ 96];

- Mac's performed all of its duties and obligations under the Subleases, Dealer Agreements, and Cross Default Agreement, [*id.* at ¶ 97];

- Kaish materially breached the Subleases including by failing to (i) pay rent, taxes, fees, and other amounts owed to Mac's thereunder, (ii) use the Premises for a period of fifteen consecutive days and abandoning the Premises, (iii) repair the Jenkins Premises and improvements, and (iv) carry sufficient insurance coverage for the Jenkins Premises, [*id.* at ¶¶ 98–100];

- Kaish materially breached the Dealer Agreements by failing to (i) purchase the required amount of fuel from Mac's, (ii) carry sufficient insurance coverage for the Jenkins Premises, (iii) remove all property, fixtures, and equipment from the Premises, and (iv) pay the costs incurred by Mac's to remove such property, fixtures, and equipment, [*id.* at ¶¶ 101–102];

- The Guaranties are valid and enforceable contractual agreements between Mac's and Bhamani, [*id.* at ¶ 107];

- Mac's has performed all of its duties and obligations under the Guaranties, [*id.* at ¶ 108];

- Bhamani materially breached the Guaranties by failing to pay the amounts owed to Mac's under the Subleases and Dealer Agreements and failing to fulfill Kaish's performance obligations, [*id.* at ¶ 109]; and

- As a direct and proximate result of Defendants' breaches, Mac's has incurred damages, including unpaid rent, taxes, fees, and other amounts owed under the Subleases and costs to remove property, fixtures, and equipment from the Premises, totaling $604,417.75. [*Id.* at ¶¶ 73, 80, 87, 104, 110].

Under applicable law, all of these factual allegations in the Complaint regarding liability are taken as true. As described below, Mac's can readily prove the sum certain of damages that it suffered as a result of Defendants' breaches.

### D. **Mac's Damages are Ascertainable and Can Be Computed with Certainty from the Record.**

Under Federal Rule of Civil Procedure 55(b)(2), "[t]he court *may* conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(B)(2) (emphasis added). Courts have noted that "[i]n order to determine damages, the court can, but is not required to, hold an evidentiary hearing." *I Love Juice B. Fran., LLC v. ILJB Charlotte Juice, LLC*, No. 3:19-CV-00981, 2020 WL 4735031, at *3 (M.D. Tenn. Aug. 14, 2020). "[A] hearing is not necessarily required if the moving party submits uncontested, sworn affidavits sufficient to establish the amount of damages." *Id.* When, as here, the damages can be established on the record, including with an uncontested, sworn affidavit, an evidentiary hearing is not necessary to award damages on a default judgment. *See*, *e.g.*, *Pass LLC v. Taylor*, No. 1:21-CV-50, 2022 WL 2155050, at *5 (E.D. Tenn. May 23, 2022), *report and recommendation adopted sub nom. Pass, LLC v. Taylor*, No. 1:21-CV-50, 2022 WL 2155029 (E.D. Tenn. June 14, 2022) (hearing unnecessary when plaintiff submitted uncontested, sworn affidavit establishing damages); *Defender Services Inc. v. Mathis Companies, Inc.*, No. 1:06-CV-95, 2009 WL 1346032, at *2 (E.D. Tenn. May 12, 2009) ("[E]videntiary hearing would be superfluous, since the amount of damages can be calculated based on the record.").

Mac's is entitled to monetary damages from Defendants under the Subleases and Dealer Agreements in two categories: (a) unpaid rent, taxes, fees, and other amounts owed, and (b) costs to remove and dispose of underground fuel storage tanks after the Premises were closed and abandoned, and these damages represent a sum certain. Sum Certain Aff., ¶ 34.

First, Mac's is entitled to recover unpaid rent, taxes, fees, and other amounts owed under

13

the Subleases. [Doc. 1 at ¶¶ 22-26, 35, Exs. A-C]. The monthly rent installments and other amounts owed are set forth in the Subleases and Master Lease (which describes applicable increases to rents). [*Id.* at ¶¶ 22-26, Exs. A-C]. The amount currently owed by Defendants ($604,417.75) is a sum certain within the meaning of Rule 55 because the damages are ascertainable and can be computed with certainty from the record. Sum Certain Aff., ¶ 33. *See Mucerino v. Newman*, 3:14-CV-00028, 2017 WL 387202 at *2 (M.D. Tenn. Jan. 26, 2017) (claim is a "sum certain" if "there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default.") (citation omitted). "In cases where the allegations in the complaint establish a sum certain, that being a situation where there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default, the Court need not conduct an evidentiary hearing to determine the amount of damages." *Stuart C. Irby Co. v. Thompson Brown, Inc.*, 3:17-1071, 2018 WL 11437816, at *2 (M.D. Tenn. Oct. 15, 2018) (citation omitted).

The rent, taxes, and fees owed under the Subleases are certain, as stated in the Subleases and supporting balance ledger attached to the Sum Certain Aff. as **Exhibit 1**. This ledger quantifies the amount in unpaid rent, taxes, and other amounts owed under the Subleases as follows:

- Jenkins Sublease—$200,489.61; Sum Certain Aff., ¶ 39, Ex. 1; [Doc. 1, ¶ 73].

- Ringgold Sublease—$109,268.24; Sum Certain Aff., ¶ 40, Ex. 1; [Doc. 1, ¶ 80].

- Lee Highway Sublease—$64,407.04; Sum Certain Aff., ¶ 41, Ex. 1; [Doc. 1, ¶ 87].

These amounts remain due and owing after applying all credits, offsets, and payments. Sum Certain Aff., ¶ 42.

Second, Mac's is entitled under the Subleases to recoup the costs to remove property, fixtures, and equipment from the Premises. [Doc. 1, ¶¶ 37-38]. After Defendants abandoned the Premises and the Subleases terminated, Mac's had to remove the underground storage tanks from each property. Kaish is required to pay Mac's the cost of removal and disposal of this property.

14

[*Id*]. To verify the amount owed, Mac's has attached as **Exhibits 2, 3, and 4** to the Sum Certain Aff. invoices for the costs incurred in removing the underground storage tanks at each of the Jenkins, Ringgold, and Lee Highway Premises as follows:

- Jenkins Premises—$72,404.68; Sum Certain Aff., ¶ 45, Ex. 2.

- Ringgold Premises—$82,976.58; *Id*. at ¶ 46, Ex. 3.

- Lee Highway Premises—$74,871.60. *Id*. at ¶ 47, Ex. 4.

For breach of contract actions, damages calculated from unpaid invoices (like the tank removal invoices here) are considered a sum certain. *Stuart C. Irby Co.*, 2018 WL 11437816 at *2 ("Because the damages in this case – unpaid invoices, service charges, and interest – are certain, the Court concludes that a hearing is unnecessary."). Defendants have not paid the amounts owed under any of the tank removal invoices. Sum Certain Aff., ¶ 49.

In total, Mac's is owed a sum certain of $604,417.75, consisting of the unpaid rent, taxes, and other amounts owed under the Subleases, and the costs to remove property, fixtures, and equipment from the Premises. *Id*. at ¶ 50. Mac's is also entitled to recover this amount from Bhamani under the Guaranties. Sum Certain Aff., ¶ 35, Ex. 1; [Doc. 1 at Exs. N-P].

E. **Mac's is entitled to recover its attorneys' fees, taxable costs, and pre- and post-judgment interest.**

1. **Mac's is Entitled to Recover its Attorneys' Fees under the Parties' Contracts and Tennessee Law.**

In diversity cases, a district court's decision to award attorneys' fees is governed by state law. *AT&T Corp. v. CA Jones Management Group, LLC., LLC*, No. 14-1300, 2015 WL 12532129, at *3 (W.D. Tenn. Oct. 5, 2025) (citation omitted). Under Tennessee law, Mac's is entitled to an award of attorneys' fees, including fees incurred in defending against Defendants' counterclaims, in accordance with the parties' applicable contracts, which permit Mac's to recover its attorneys' fees and expenses incurred by reason of Defendants' breaches, to enforce the agreements, and as

15

the prevailing party in this action. [Doc. 1, ¶¶ 36, 51, 60, Exs. A-C, G-I, N-P]. *Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017) (party in a civil action may recover attorneys' fees if a contractual or statutory provision creates a right to recover attorneys' fees or there is some other recognized exception to the American Rule). Where, as here, a contractual provision provides for the collection of attorneys' fees from the unsuccessful party in the event litigation arises, the prevailing party is entitled to enforce the contract according to its express terms. *Seals v. Life Inv'rs Ins. Co. of Am.*, No. M200201753COAR3CV, 2003 WL 23093844, at *4 (Tenn. App. Dec. 30, 2003). "When the contract provides that a prevailing party is entitled to recover its attorney's fees for enforcing the contract, the trial court has no discretion regarding whether to award attorney's fees or not." *Id.* (internal quotation omitted); *see also Hosier v. Crye-Leike Com., Inc.*, No. M2000-01182-COA-R3CV, 2001 WL 799740, at *6 (Tenn. App. July 17, 2001) ("When the parties' contract provides that the prevailing party is entitled to reasonable attorney's fees in litigation to enforce the contract, the party who prevails is contractually entitled to recover its reasonable attorney's fees, and the trial court has no discretion regarding whether to award attorney's fees or not."). The trial court only has discretion as to the amount of the fee award. *Seals*, 2003 WL 23093844 at *4; *Hosier*, 2001 WL 799740 at *6.

Here, the contracts expressly provide for the recovery of attorneys' fees, including all fees incurred in enforcing Mac's rights under the Subleases and all fees to secure, defend, or protect Mac's rights. Pursuant to Paragraph 25(b) of the Subleases, Mac's is entitled to "recover all expenses incurred by reason of the breach, including, without limitation, attorneys' fees and costs and paralegal expenses." [Doc. 1, ¶ 36, Exs. A-C]. Paragraph 36 of the Subleases provides that, "[Kaish] agrees that [Kaish] will pay, in addition to rents and other sums due under this Sublease all collection and court costs incurred by [Mac's] and [Mac's] attorneys' fees and costs incurred for the enforcement of [Mac's] rights under this Sublease." [*Id*]. The Dealer Agreements further

16

provide that, in a suit for breach of the agreements, the "prevailing party shall be entitled to all attorneys' fees, costs of suit and reasonable expenses incurred in order to secure, defend or protect the rights inuring to the prevailing party under [the Dealer Agreements], or to enforce the terms thereof, in addition to any other relief to which the prevailing party may be entitled." [*Id.* at ¶ 51, Exs. G-I]. Bhamani, as guarantor, also agreed to pay Mac's "all costs and expenses (including without limitation, liquidation costs, expense payments, and attorneys' fees and other legal costs) incurred by [Mac's]" in collection of Kaish's liabilities (as defined in the Guaranties) and any obligations of Bhamani under the Guaranties. [*Id.* at ¶ 60, Exs. N-P].

In accordance with the parties' contracts, Mac's has enforced its rights in light of Defendants' breaches and is the prevailing party as a result of the default judgment. It is therefore entitled to recovery of its attorneys' fees in accordance with Paragraphs 25(b) and 36 of the Subleases, Paragraph 34(b) of the Dealer Agreements, and Paragraph 8 of the Guaranties and pursuant to applicable case law. *See, e.g.*, *AGCS Marine Ins., Co. v. AT Trucking Corp.*, No. 1:22-CV-313-CEA-SKL, 2023 WL 9290680, at *5-6 (E.D. Tenn. Dec. 20, 2023), *report and recommendation adopted*, No. 1:22-CV-313, 2024 WL 188379 (E.D. Tenn. Jan. 17, 2024); (awarding attorneys' fees on default judgment where "Contract further provides that the prevailing party in any action to enforce the terms of the Contract shall be entitled to recover its attorney fees and costs"); *Carl's Jr. Restaurants LLC v. Margaret Karcher LeVecke Enterprises, LLC*, 3:18-CV-01357, 2020 WL 836549, at *5 (M.D. Tenn. Feb. 20, 2020) (awarding attorneys' fees on default judgment, when parties' franchise agreements contained prevailing party fee provision).

Furthermore, the attorneys' fees requested are reasonable. When analyzing the reasonableness of attorneys' fees, courts consider the following factors under Tennessee law:

> 1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

17

2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

3) the fee customarily charged in the locality for similar legal services;

4) the amount involved and the results obtained;

5) the time limitations imposed by the client or by the circumstances;

6) the nature and length of the professional relationship with the client;

7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

8) whether the fee is fixed or contingent;

9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and

10) whether the fee agreement is in writing.

*West-Luffman v. Ruff*, 3:23-CV-00096, 2024 WL 5402343, at *2 (M.D. Tenn. Oct. 31, 2024), *report and recommendation adopted*, 3:23-CV-00096, 2025 WL 582493 (M.D. Tenn. Feb. 21, 2025); *see also MAKS Inc. Gen. Trading & Contracting Co. v. Sterling Operations, Inc.*, 3:10-CV-443-TAV-HBG, 2014 WL 1745432, at *10 (E.D. Tenn. Apr. 30, 2014).

The attorneys' fees charged to Mac's for this matter are reasonable when considering the applicable factors. Fee Aff., ¶ 10. As detailed in the Fee Aff., Mac's and Circle K's long time lead counsel, Fennemore, and local counsel for this matter, Sweetnam, Schuster, and Schwartz, LLC ("Sweetnam"), performed necessary legal services on Mac's behalf related to the fees incurred. *Id*. at ¶ 11. The time and labor involved in this matter was significant, given the more than a year of active litigation, including, without limitation, the discovery and other work necessary to advance Mac's interests, and that Defendants asserted counterclaims and engaged in various dilatory conduct to obstruct the advancement of litigation. *Id*. at ¶ 12. As detailed in the Fee Aff., this is not a typical default judgment case and involved substantially more work than the typical default case when a defendant fails to answer or otherwise appear. The parties actively litigated this case for more than a year before Defendants' counsel moved to withdraw. *Id*. at ¶¶ 12-14(a) – (k).

18

Mac's counsel also repeatedly requested Defendants to participate in mediation beginning early in the case, but was ignored until late in 2024 when Defendants finally agreed to mediate. Mac's counsel then prepared for mediation, including preparing a detailed mediation statement, and participated in mediation on December 10, 2024. *Id.* at ¶ 14(f). After mediation was unsuccessful, Defendants' then-counsel filed a Motion to Withdraw as Defendants' counsel. Mac's counsel had to spend time analyzing the request and preparing a response strategy and participate in the hearing on defense counsel's motion. *Id.* at ¶ 14(g). After the Court granted defense counsel's motion to withdraw and then Defendants failed to obtain new counsel, Defendants also stopped participating in discovery, despite the fact that there were numerous impending Scheduling Order deadlines. *Id*. at ¶ 14(h); [Doc. 22]. Mac's counsel then prepared and filed an Application for Entry of Default ("Application") on March 7, 2025. Fee Aff., ¶ 14(i); [Doc. 34]. Due to impending Scheduling Order deadlines, on March 25, 2025, Mac's also had to prepare and file a Motion to Extend Discovery Deadlines. [Doc. 37]. This motion was filed in an abundance of caution to avoid missing any deadlines while waiting for the clerk to enter default against Defendants. Fee Aff., ¶ 14(j). Mac's counsel also needed to prepare the Default Motion, accompanying affidavits, and all accompanying exhibits, as well as the proposed default judgment, all of which took extensive time and effort. *Id.* at ¶ 14(k).

Mac's also expended significant time and energy through its attorneys to attempt to resolve this dispute prior to this litigation, through the drafting and issuance of numerous demand letters and notices of default along with negotiations between the parties beginning in early 2022 and continuing through mid-to late 2023 when it became evident a pre-litigation resolution was unlikely. *Id*. at ¶ 15. The attorneys' fees exerted in pre-litigation endeavors are recoverable pursuant to the applicable contracts, specifically, in accordance with the Subleases, Paragraphs 25(b) and 36, Dealer Agreements, Paragraph 34(b), and Paragraph 8 of the Guaranties. *Id*. at ¶ 16;

19

[Doc. 1, Exs A-C].

All of these services provided were undertaken to advance and protect Mac's interests in obtaining a favorable ruling from the Court, including on this default judgment. Fee Aff., ¶ 17.

As detailed in the Fee Aff., the billing rates and fees charged by the Fennemore and Sweetnam attorneys are reasonable in light of the individuals' ability, training, education, experience, skill, the difficulty of the work involved, time and skill required, responsibility imposed, and result obtained. *Id*. at ¶ 18. Counsel from Fennemore and Sweetnam both have extensive experience and skill, further justifying the reasonableness of their hourly rates and fees. *Id*. at ¶¶ 19, 23-28. Comporting with the factors listed above, Fennemore has a longstanding relationship with Mac's and Circle K, and handles litigation for them in various states. Accordingly, the client wanted Fennemore to be lead counsel in this matter. *Id*. at ¶ 20. The firm's deep knowledge of Mac's business helped counsel get up to speed quickly and prosecute the case more effectively. *Id*. at ¶ 21. Sweetnam acted as local counsel and provided institutional knowledge regarding local procedures and reviewed filings to ensure they comported with local rules. *Id*. at ¶ 22.

The fees charged to Mac's were fixed and paid on an hourly basis. *Id*. at ¶ 29. Both of Fennemore's and Sweetnam's fee agreements were in writing, and Mac's agreed to pay the rates and fees charged by Fennemore and Sweetnam. *Id*. at ¶ 30. The above hourly rates for all of these individual lawyers are comparable to the rates prevailing in the respective Phoenix, Arizona, Atlanta, Georgia, and Nashville, Tennessee legal communities for attorneys and paralegals of similar qualifications performing similar work at the time. *Id*. at ¶ 31.

As detailed in the Fee Aff., Mac's counsel took careful steps to ensure that they worked as efficiently and as cost effectively as possible and provide the best value to the client. *Id*. at ¶ 32. Fennemore and Sweetnam also took care not to duplicate efforts in this matter. *Id*. at ¶ 34. Both

20

firms also reduced or otherwise wrote off any fees, charges, or hours that were determined to be duplicative or excessive. This was done in an effort to address any real or perceived inefficiencies relating to the services performed in the litigation of this matter. *Id*. at ¶ 35.

For all the reasons set forth above and in the Fee Aff., Mac's is entitled to recover the total amount of its reasonable attorneys' fees sought in this matter, which is $140,488.50.

### 2. Mac's is Entitled to Recover its Taxable Costs.

The prevailing party is entitled to recover its taxable costs incurred. Fed. R. Civ. P. 54(d)(1); *see also* 28 U.S.C. § 1920; *Great Am. Ins. Co. v. YD Fence, LLC*, No. 3:13-1330, 2015 WL 113926 (M.D. Tenn. Jan. 8, 2015), *report and recommendation adopted*, No. 3-13-1330, 2015 WL 710879 (M.D. Tenn. Feb. 18, 2015) (awarding taxable costs to prevailing party following entry of default judgment). The applicable contracts also entitle Mac's to recover costs incurred as a result of Defendants' breaches, including collection and court costs, costs of suit, and other legal costs. [Doc. 1, Exs. A-C, G-I, N-P]. As described in detail in the Bill of Costs filed herewith, in bringing this action, Mac's has incurred taxable costs in the amount of $755.00. *See* Bill of Costs with supporting documentation.

### 3. Mac's is Entitled to Pre- and Post-Judgment Interest.

In diversity cases, a district court's decision to award pre-judgment interest is governed by state law. *Bristol Anesthesia Services, P.C. v. Carilion Clinic Medicare Res., LLC*, 2:15-CV-17, 2018 WL 2976289, at *2 (E.D. Tenn. June 13, 2018). "Tennessee law allows the Court, in its discretion, to award prejudgment interest in accordance with the principles of equity." *Id.* at *3; *see also* Tenn. Code Ann. § 47-14-123. Under Tenn. Code Ann. § 47-14-123, pre-judgment interest "may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum." Under Tennessee law, there is a presumption in favor of prejudgment interest. *Lativafter Liquidating Tr. v. Clear Channel*

21

*Communications*, Inc., No. 3:05-CV-578, 2008 WL 2697351, at *7 (E.D. Tenn. July 1, 2008), *aff'd*, 345 Fed. Appx. 46 (6th Cir. 2009). In breach of contract cases, pre-judgment interest accrues upon breach or default. *Id.* at *8. A plaintiff is not required to specially plead recovery of pre-judgment interest; a general prayer for relief is sufficient for the court to award pre-judgment interest. *See Bristol Anesthesia Services, P.C.,* 2018 WL 2976289 at *3.

In determining whether to award prejudgment interest and the amount, Tennessee courts decide whether an award is fair, given the circumstances of the case and the following factors: "(1) promptness in the commencement of a claim, (2) unreasonable delay of the proceedings by either party, (3) abusive litigation practices by either party, (4) the certainty of the existence of an underlying obligation, (4) the certainty of the amount in dispute, and (5) prior compensation for the lost time value of the plaintiff's money." *Pass, LLC*, 2022 WL 2155050, at *5. "Fairness will, in almost all cases, require that a successful plaintiff be fully compensated by the defendant for all losses caused by the defendant, including the loss of use of money the plaintiff should have received." *Id.* (citations omitted). Courts have also traditionally awarded pre-judgment interest in cases like this one where the amount of the obligation is certain and the existence of the obligation is not reasonably disputed. *See Lativafter Liquidating Tr.*, 2008 WL 2697351 at *7.

Here, all factors weigh in favor of awarding Mac's the full 10% pre-judgment interest. Prior to filing the Complaint, beginning in early 2022, Mac's tried to work with Defendants and resolve this claim without need of litigation by providing numerous notices of breach and making pre-suit demands to Defendants over a period of time, but Defendants substantively ignored Mac's and no resolution was reached. *See* Sum Certain Aff., ¶ 5; Fee Aff., ¶ 15. Once litigation began, Defendants unreasonably delayed and complicated this action in numerous ways. For instance, after filing the Complaint, Mac's diligently attempted to personally serve Defendants who were believed to be initially avoiding service. Sum Certain Aff., ¶ 6. Defendants finally executed an

22

Acknowledgement of Service on February 29, 2024, filed March 1, 2024, acknowledging that Kaish was served with the Complaint via certified mail on February 26, 2024, and Bhamani was served with the Complaint via certified mail on February 22, 2024. *Id*. at ¶ 7. Defendants filed its first Answer and Counterclaim on April 3, 2024 [Doc. 19], which suffered from numerous deficiencies and was so vague and ambiguous that Mac's could not prepare a meaningful response. As a result, Mac's prepared a Motion for a More Definite Statement and alternative Motion to Dismiss. *Id*. at ¶¶ 8-10. Prior to filing these motions during the meet and confer, Defendants agreed to amend their Counterclaim if an extension was allowed, which Mac's granted. *Id*. at ¶ 11. Defendants later filed an Amended Counterclaim on May 7, 2024. *Id*. at ¶ 12; [Doc. 24]. The Counterclaims were wholly meritless. There is zero evidence to support any potential fraud and Defendants put forth none in response to Mac's discovery requests. Also, the claims raised for breach of contract were not tethered to any enforceable obligations under the agreements. The Counterclaims were a transparent attempt to divert attention from their clear material breaches of the parties' agreements and substantial damages that Mac's has incurred.

Except for filing them, Defendants did nothing at all to prosecute their Counterclaims, whether serve any written discovery, document requests, or deposition notices related to them, file any pre-trial motions, or meaningfully advance the Counterclaims during mediation. Sum Certain Aff., ¶ 14. During written discovery and document production, Defendants requested extensions of time to respond to Mac's written discovery and document requests, but then did not provide sufficient responses resulting in Mac's having to prepare a detailed discovery deficiency letter and attempt to meet and confer prior to filing a motion to compel, which was ignored for some time. *Id*. at ¶ 15. Mac's also reached out to Defendants' counsel numerous times early in the case asking to participate in mediation. These requests were ignored for months until, finally, Defendants agreed to participate in mediation, which was held on December 10, 2024 — about a year after

23

filing the Complaint. *Id.* at ¶ 16. Mediation was unsuccessful. [Doc. 30].

After mediation was unsuccessful, on January 6, 2025, Defendants' then-counsel filed a Motion to Withdraw as Defendants' counsel, which was granted after a hearing held on January 24, 2025, at which counsel for Mac's appeared, then-counsel for Defendants, and Bhamani. Sum Certain Aff., ¶ 17. Mac's had previously served Notices of Deposition to Defendants for depositions to occur on January 22 and 23, 2025, and such depositions were vacated due to the pending Motion to Withdraw. Defendants have not since communicated with Mac's counsel to reschedule the depositions or engage in other discovery needed for the case. *Id.* at ¶ 18.

By contrast, Mac's has not unreasonably delayed this litigation, has been diligent at all times, and has not engaged in abusive litigation practices. *Id.* at ¶ 28. Also, the underlying obligation is for a sum certain, and Mac's has not been compensated for the lost time value of these funds, which, depending on the specific amount owed, is between approximately one year and five years past due. *Id.* at ¶ 55. For all these reasons, the Court should award pre-judgment interest at a rate of 10% from the date of the breaches. *Pass, LLC*, 2022 WL 2155050, at *5-6.

In Tennessee, pre-judgment interest accrues from the date of the breach or default. *Lativafter Liquidating Tr.*, 2008 WL 2697351 at *8. The date of breach under the Subleases and Dealer Agreements can be ascertained based on the date each of the Premises were closed and abandoned, in violation of the applicable agreements. [Doc. 1, ¶¶ 67, 74, 81]. In accordance with the agreements, the date of breach for each of the Subleases and Dealer Agreements is as follows: (1) Jenkins Premises—date of breach is April 1, 2020; (2) Ringgold Premises—date of breach is January 1, 2022; (3) Lee Highway Premises—date of breach is September 1, 2022. [*Id.* at ¶¶ 67, 74, 81]; Sum Certain Aff., ¶ 53. The date of breach for the tank removal invoices is ascertained from the Net 30 Payment Terms printed on the invoices. *Id.* at ¶ 54, Exs. 2-4. The date of breach under the applicable invoices for the removal of the underground tanks is as follows: (1) Jenkins

24

Premises—date of breach is November 5, 2023; (2) Ringgold Premises—date of breach is September 17, 2023; (3) Lee Highway Premises—date of breach is November 5, 2023. *Id.*

Mac's is also entitled to recover post-judgment interest at the rate of 4.01% per annum (the rate published by the Board of Governors of the Federal Reserve System for the week preceding judgment), which it is entitled to recover pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure and 28 U.S.C.A. § 1961. *See also Jack Henry & Associates, Inc. v. BSC, Inc.*, 487 Fed. Appx. 246, 260 (6th Cir. 2012) ("in diversity cases in this Circuit, federal law [i.e., § 1961] controls postjudgment interest") (citations omitted). "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C.A. § 1961. Mac's is entitled to post-judgment interest at the rate published by the Board of Governors of the Federal Reserve System for the week preceding judgment. As of filing, the weekly average is 4.01%.[2] Sum Certain Aff., ¶ 56.

For all the reasons described above, in bringing this action, Mac's has incurred reasonable attorneys' fees in the amount of $140,488.50. Further, Mac's has incurred taxable costs in the amount of $755.00. Fee Aff., ¶ 47. Mac's is also entitled to pre-judgment interest at the rate of 10% per annum and post-judgment interest at the rate prescribed by 28 U.S.C. § 1961.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Mac's respectfully requests that the Clerk enter default judgment in favor of Mac's and against Defendants in the proposed form of judgment is lodged herewith.

---

[2] *See* Federal Reserve's official website: https://www.federalreserve.gov/releases/h15/.

25

/s/ Jason I. Coleman
Jason I. Coleman (TN BPR No. 031434)
D. Michael Sweetnam (GA Bar No. 694960)
*(Admitted Pro Hac Vice)*
SWEETNAM, SCHUSTER &
SCHWARTZ, LLC
1050 Crown Pointe Parkway, Suite 500
Atlanta, Georgia 30338
Telephone: (404) 444-2368
Email: jcoleman@sweetnamlaw.com
Email: msweetnam@sweetnamlaw.com

Andrea L. Marconi (AZ Bar No. 022577)
*(Admitted Pro Hac Vice)*
2394 East Camelback Road, Suite 600
Phoenix Arizona 85016
Telephone: (602) 916-5000
Email: amarconi@fennemorelaw.com

*Attorneys for Plaintiff Mac's Convenience Stores, LLC*

26

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been served via notice automatically generated by the Court's ECF filing system and U.S. Mail on this 13th of May, 2025 to the following addresses:

**Kaish LLC**
Attn: Akbar Bhamani
1170 Bar Harbor Place
Lawrenceville, GA 30043

**Akbar Bhamani**
1170 Bar Harbor Place
Lawrenceville, GA 30043

/s/ Lynn Marble

51561906