# EXHIBIT A

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# SOUTHERN DIVISION

| | |
|---|---|
| MAC'S CONVENIENCE STORES LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>KAISH LLC, a Tennessee limited liability company, and AKBAR BHAMANI, an individual,<br><br>Defendants. | Civil Action No. 1:23-cv-00284 |

## SUM CERTAIN AFFIDAVIT

I, Andrea L. Marconi, declare as follows:

1. I am an attorney and director at the law firm of Fennemore Craig, P.C., which is lead counsel of record for Plaintiff Mac's Convenience Stores LLC ("Mac's") in the above-captioned matter. I have personal knowledge and/or have made a good faith inquiry of the facts as stated herein. If called to testify, I could and would be competent to testify to the same.

2. Fennemore is long time counsel to Mac's and its affiliates, including Circle K Stores, Inc. ("Circle K").

3. I file this Affidavit pursuant to Rule 55 of the Federal Rules of Civil Procedure and applicable case law and in support of Mac's Response to Order to Show Cause and Motion for

1

Entry of Default Judgment (the "Default Motion").[1]

4. Mac's filed its Complaint on December 4, 2023, alleging that Defendants Kaish LLC ("Kaish") and Akbar Bhamani ("Bhamani") (collectively, "Defendants") materially breached the parties' Subleases, Dealer Agreements, and Guaranties (as defined in the Complaint and the Motion for Entry of Default Judgment) by failing to pay certain amounts owed to Mac's under the terms of the aforementioned agreements.

5. Prior to filing the Complaint, beginning in early 2022, Mac's tried to work with Defendants and resolve the claims without need of litigation by providing numerous notices of breach and making pre-suit demands to Defendants over a period of time, but Defendants substantively ignored Mac's and no resolution was reached. *See also* Attorneys' Fee Affidavit, ¶ 15, attached to the Default Motion as Exhibit B, and Fennemore and Sweetnam Statements of Fees attached to the Fee Affidavit as Exhibits 1 and 2, respectively.

6. After filing the Complaint, Mac's diligently attempted to personally serve Defendants using a process server at least four times, but was unsuccessful. Based on communications with the process server company, it was believed that Defendants were potentially avoiding service.

7. Defendants finally executed an Acknowledgement of Service on February 29, 2024, filed March 1, 2024, acknowledging that Kaish was served with the Complaint via certified mail on February 26, 2024, and Bhamani was served with the Complaint via certified mail on February 22, 2024. [Doc. 18].

8. Defendants initially retained counsel and appeared in the case by filing an Answer

---

[1] Statements in this Affidavit also support Mac's contemporaneously filed Motion to Dismiss Defendants' Counterclaims for Failure to Prosecute and, as applicable, are incorporated into that Motion.

2

and Counterclaim on April 3, 2024. [Doc. 19].

9. Defendants' Counterclaim suffered from numerous deficiencies and was so vague and ambiguous that Mac's could not prepare a meaningful response. Also, any purported fraud claims were not sufficiently pled under Fed. R. Civ. P. 9(b).

10. Accordingly, Mac's prepared a Motion for More Definite Statement and Alternative Motion to Dismiss under Rules 12(b)(6) and 9(b) that it intended to file prior to the response deadline.

11. Prior to filing these motions and during the meet and confer, Defendants agreed to amend their Counterclaim if an extension was allowed, which Mac's granted.

12. Defendants later filed an Amended Counterclaim on May 7, 2024. [Doc. 24].

13. Thereafter, Defendants participated in the litigation for a time, including serving initial disclosures, preparing and filing a joint case report, responding to written discovery requests, producing some documents, and participating in mediation. But, since then, Defendants have subsequently failed to defend the case.

14. Except for filing the Counterclaims, Defendants have also done nothing at all to prosecute their Counterclaims, whether serve any written discovery, document requests, or deposition notices related to them, file any pre-trial motions, or meaningfully advance the Counterclaims during mediation.

15. During the written discovery and document production phase, Defendants asked for extensions of time to respond to Mac's written discovery and document requests, but then did not provide sufficient responses resulting in Mac's having to prepare a detailed discovery deficiency letter and attempt to meet and confer prior to filing a motion to compel, which was ignored for some time.

3

16. Mac's also reached out to Defendants' counsel numerous times early in the case asking to participate in mediation. These requests were ignored for months until, finally, Defendants agreed to participate in mediation, which was held on December 10, 2024 — about a year after filing the Complaint.

17. After mediation was unsuccessful, on January 6, 2025, Defendants' then-counsel filed a Motion to Withdraw as Defendants' counsel, which was granted after a hearing held on January 24, 2025, at which counsel for Mac's appeared, then-counsel for Defendants, and Bhamani.

18. Mac's had previously served Notices of Deposition to Defendants for depositions to occur on January 22 and 23, 2025, and such depositions were vacated due to the pending Motion to Withdraw. Defendants have not since communicated with Mac's counsel to reschedule the depositions or engage in other discovery needed for the case. Defendants have also not engaged in any discovery to prosecute their counterclaims.

19. After the hearing on counsel's Motion to Withdraw, the Court entered an Order granting counsel's request to withdraw as counsel for Defendants and ordering Defendants to, within 30 days of the Order, "have a new attorney enter an appearance on behalf of Defendants *OR* . . . inform the Court in writing that [Bhamani] intends to represent himself." [Doc. 33 at 1 (emphasis in original)]. The Court noted that, during the hearing, it informed Defendants that, as an LLC, Kaish cannot represent itself. [*Id.* at 1 n.1].

20. In the Order, the Court expressly warned, "Defendants are hereby placed on notice that failure to comply with this Court's Order may result in a default judgment being entered against them pursuant to Fed. R. Civ. P. 55." [*Id.* at 2]. At the hearing, the Court provided substantially similar instructions to Bhamani, on behalf of Defendants, on the record, including

4

that Kaish could not represent itself and the warning that failure to comply with the Order may result in default judgment being entered.

21. The Court mailed the Order to Defendants at the addresses they provided to the Court upon their counsels' withdrawal. [*Id*.].

22. Defendants' deadline to comply with the Court's Order passed on February 21, 2025.

23. To date, to the best of my knowledge, Defendants have not had a new attorney enter an appearance on their behalf or inform the Court in writing that Bhamani intends to represent himself as required by the Court's Order. Defendants also have not sought any extension of time to comply with the Court's Order.

24. After failing to obtain new counsel, Defendants also stopped participating in discovery, despite the fact that there were numerous impending Scheduling Order deadlines. [Doc. 22].

25. Mac's then filed an Application for Entry of Default ("Application") on March 7, 2025. [Doc. 34].

26. Copies of the Application were sent via FEDEX overnight on March 12, 2025, to both addresses that Defendants provided when their counsel withdraw, with delivery confirmed on March 13, 2025. Mac's filed a Certificate of Service with the Court on March 13, 2025. [Doc. 36].

27. After Defendants stopped participating in the litigation and due to impending deadlines in the Scheduling Order, on March 25, 2025, Mac's also filed a Motion to Extend Discovery Deadlines. [Doc. 37]. This motion was filed in an abundance of caution to avoid missing any deadlines while waiting for the clerk to enter default against Defendants. Copies of the motion

5

were sent via First Class Mail to Defendants on March 26, 2025, at the addresses provided when their counsel withdrew. Mac's counsel has not heard anything from Defendants in response to this motion.

28. Mac's has not unreasonably delayed this litigation, has been diligent at all times, and has not engaged in abusive litigation practices.

29. The Clerk entered default against Defendants on March 28, 2025. [Doc. 38].

30. Neither Defendants are infants. To the best of my knowledge and information, neither of the Defendants is incompetent or a member of the military.

31. Mac's has complied with the notice requirements of Rule 55(b)(2) by serving, on the date of filing the Default Motion, copies of these papers on Defendants via U.S. Priority Mail using the addresses provided when their counsel withdrew.

32. The factual allegations in the Complaint are true and correct.

33. The amount currently owed by Defendants ($604,417.75) is a sum certain within the meaning of Rule 55 because the damages are ascertainable and can be computed with certainty from the record. *See Mucerino v. Newman*, 3:14-CV-00028, 2017 WL 387202 at *2 (M.D. Tenn. Jan. 26, 2017) (claim is a "sum certain" if "there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default.") (citation omitted). When, as here, the damages can be established on the record, including with an uncontested, sworn affidavit, an evidentiary hearing is not necessary to award damages on a default judgment. *See*, *e.g.*, *Pass LLC v. Taylor*, No. 1:21-CV-50, 2022 WL 2155050, at *5 (E.D. Tenn. May 23, 2022), *report and recommendation adopted sub nom. Pass, LLC v. Taylor*, No. 1:21-CV-50, 2022 WL 2155029 (E.D. Tenn. June 14, 2022) (hearing unnecessary when plaintiff submitted an uncontested, sworn affidavit establishing damages); *Stuart C. Irby Co. v. Thompson Brown, Inc.*, 3:17-1071, 2018 WL

11437816, at *2 (M.D. Tenn. Oct. 15, 2018) ("In cases where the allegations in the complaint establish a sum certain, that being a situation where there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default, the Court need not conduct an evidentiary hearing to determine the amount of damages.") (citation omitted); *Defender Services Inc. v. Mathis Companies, Inc.*, No. 1:06-CV-95, 2009 WL 1346032, at *2 (E.D. Tenn. May 12, 2009) ("[E]videntiary hearing would be superfluous, since the amount of damages can be calculated based on the record.").

34. As described in detail in the Complaint [Doc 1] and Default Motion, Mac's is entitled to monetary damages from Defendants under the Subleases and Dealer Agreements in two categories: (a) unpaid rent, taxes, fees, and other amounts owed, and (b) costs to remove and dispose of underground fuel storage tanks after the Premises were closed and abandoned.

35. Mac's is also entitled to recover this amount from Bhamani under the Guaranties.

36. Each of these categories and the damages suffered concerning each of the Premises are a sum certain and can be established by this Affidavit and attachments.

37. First, pursuant to the Subleases, Mac's is entitled to recover unpaid rent, taxes, fees, and other amounts owed under the Subleases. [Doc. 1, ¶¶ 22-26, 35, Exs. A-C]. The monthly rent installments and other amounts owed under the Subleases are set forth in the Subleases and Master Lease (which describes applicable increases to rents). [*Id.* at ¶¶ 22-26, Exs. A-C].

38. Attached hereto as **Exhibit 1** is an account ledger balance documenting the amount in unpaid rent, taxes, program fees, and other amounts owed under each of the Subleases through the date of filing the Complaint. For the Court's edification, the numbers on the tabs of the spreadsheet correlate to the corresponding Premises, which each bear a franchise store number in the Mac's and Circle K system. **Ex. 1**. The Jenkins Premises correlates to 4213781 on the

7

spreadsheet, the Ringgold Premises correlates to 4213773 on the spreadsheet, and the Lee Highway Premises correlates to 4213775 on the spreadsheet. **Ex. 1**.

39. Under the Jenkins Sublease, Defendants owe Mac's $200,489.61 for unpaid rents, taxes, and program fees. **Ex. 1.**

40. Under the Ringgold Sublease, Defendants owe Mac's for $109,268.24 for unpaid rents, taxes, and program fees. **Ex. 1.**

41. Under the Lee Highway Sublease, Defendants owe Mac's for $64,407.04 for unpaid rents, taxes, and program fees. **Ex. 1.**

42. The above amounts remain due and owing after applying all credits, offsets, and payments. **Ex. 1.**

43. Second, upon termination of the Subleases, Kaish is required to remove its personal property, trade, or other fixtures and equipment, including the underground storage tanks and related piping, within three days of termination. [Doc. 1, ¶¶ 37-38]. If Mac's is required to remove this abandoned equipment upon Kaish's failure to do so, Kaish is required to pay Mac's the cost of the removal, disposal, delivery, and/or storage of such property. [*Id*. at ¶ 38]. As such, Defendants owe Mac's the cost to remove and dispose of the underground storage tanks from each of the three Premises.

44. The invoices reflecting the total amount due for the removal of the underground storage tanks at the Jenkins, Ringgold, and Lee Highway Premises, are attached, respectively, as **Exhibits 2**, **3**, and **4**.

45. For removal of the underground storage tank at the Jenkins Premises, Defendants owe Mac's $72,404.68. **Ex. 2.**

46. For removal of the underground storage tank at the Ringgold Premises, Defendants

8

owe Mac's $82,976.58. **Ex. 3.**

47. For removal of the underground storage tank at the Lee Highway Premises, Defendants owe Mac's $74,871.60. **Ex. 4.**

48. For breach of contract actions, damages calculated from unpaid invoices (like the invoices here for underground storage tank removal) are considered a sum certain. *Stuart C. Irby Co.*, 2018 WL 11437816, at *2 ("Because the damages in this case – unpaid invoices, service charges, and interest – are certain, the Court concludes that a hearing is unnecessary.").

49. Defendants have not paid the amounts owed under any of the tank removal invoices.

50. In total, Mac's is owed a sum certain of $604,417.75, consisting of the unpaid rent, taxes, fees, and other amounts owed under the Subleases, as well as the costs to remove and dispose of the underground storage tanks from the Premises.

51. As described more fully in the Default Motion, Mac's is also entitled to an award of pre-judgment interest at the rate of 10% per year pursuant to Tenn. Code Ann. § 47-14-123 and applicable case law. *See* Tenn. Code Ann. § 47-14-123 (pre-judgment interest "may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum."); *see also Pass LLC v. Taylor*, No. 1:21-CV-50, 2022 WL 2155050, at *5 (E.D. Tenn. May 23, 2022), *report and recommendation adopted sub nom. Pass, LLC v. Taylor*, No. 1:21-CV-50, 2022 WL 2155029 (E.D. Tenn. June 14, 2022) (discussing factors applied by courts in awarding pre-judgment interest); *Bristol Anesthesia Services, P.C. v. Carilion Clinic Medicare Res., LLC*, 2:15-CV-17, 2018 WL 2976289, at *3 (E.D. Tenn. June 13, 2018) ("Tennessee law allows the Court, in its discretion, to award prejudgment interest in accordance with the principles of equity."); *Lativafter Liquidating Tr. v. Clear Channel*

9

*Communications*, Inc., No. 3:05-CV-578, 2008 WL 2697351 at *7 (E.D. Tenn. July 1, 2008), *aff'd*, 345 Fed. Appx. 46 (6th Cir. 2009) (under Tennessee law, there is a presumption in favor of prejudgment interest).

52. In Tennessee, pre-judgment interest accrues from the date of the breach or default. *Lativafter Liquidating Tr.*, 2008 WL 2697351 at *8.

53. The dates of breach of the Subleases, Dealer Agreements, Cross Default Agreement, and Cross Default Provision, as determined by the date of the closing of each of the respective Premises, are detailed below:

| Applicable Sublease and Dealer Agreement: | Event of Breach: | Date of Breach: |
|---|---|---|
| Jenkins Premises | In violation of the Subleases and Dealer Agreements, Defendants have closed the Premises, and have failed to pay rent, taxes, fees, and other amounts due to Mac's under the Jenkins Road Sublease since April 2020, and Defendants have not purchased any fuel for the Jenkins Road Premises since that time. [Doc. 1 at ¶ 67]. | April 1, 2020 |
| Ringgold Premises | In violation of the Subleases and Dealer Agreements, Defendants have closed the Premises, and have failed to pay rent, taxes, fees, and other amounts due to Mac's under the Ringgold Road Sublease since January 1, 2022, and Defendants have not purchased any fuel for the Ringgold Road Premises since that time. [Doc. 1 at ¶ 75]. | January 1, 2022 |
| Lee Highway Premises | In violation of the Subleases and Dealer Agreements, Defendants have closed the | September 1, 2022 |

|  | Premises, and have failed to pay rent, taxes, fees, and other amounts due to Mac's under the Lee Highway Sublease since September 2022 and Defendants have not purchased any fuel for the Lee Highway Premises since that time. [Doc. 1 at ¶¶ 81, 83]. |  |

54. The date of breach of removal and disposal of the underground storage tanks from the Premises, as determined by the Net 30 Payment Terms in the invoices, is as follows:

| **Premises:** | **Date Invoice Issued:** | **Date of Breach (Net 30 Payment Terms):** |
| --- | --- | --- |
| Jenkins Premises | 10/06/23 | 11/05/23 |
| Ringgold Premises | 08/18/23 | 09/17/23 |
| Lee Highway Premises | 10/06/23 | 11/05/23 |

*See* **Exs. 2, 3, 4.**

55. As detailed in the Default Motion, an award of 10% pre-judgment interest is fair when considering the applicable factors. Mac's promptly commenced this action after first trying to amicably resolve the dispute with Defendants. Defendants have unreasonably delayed this proceeding while Mac's acted diligently and did not employ any abusive litigation tactics. The underlying obligation is for a sum certain, and Mac's has not been compensated for the lost time value of these funds, which, depending on the specific amount owed, is between approximately one year and five years past due.

56. Mac's is also entitled to recover post-judgment interest at the rate of 4.01% per annum (the rate published by the Board of Governors of the Federal Reserve System for the week preceding judgment), which it is entitled to recover pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure and 28 U.S.C.A. § 1961. *See also Jack Henry & Associates, Inc. v. BSC, Inc.*,

11

487 Fed. Appx. 246, 260 (6th Cir. 2012) ("in diversity cases in this Circuit, federal law [i.e., § 1961] controls postjudgment interest") (citations omitted).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 13th day of May, 2025.

By: *Andrea L. Marconi*
Andrea L. Marconi