# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

| | |
|---|---|
| MAC'S CONVENIENCE STORES LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>KAISH LLC, a Tennessee limited liability company, and AKBAR BHAMANI, an individual,<br><br>Defendants. | Civil Action No. 1:23-cv-00284 |

**AFFIDAVIT OF ANDREA L. MARCONI IN SUPPORT OF REQUEST FOR ATTORNEYS' FEES**

I, Andrea L. Marconi, declare as follows:

1. I am an attorney and director at the law firm of Fennemore Craig, P.C. ("Fennemore"), which is lead counsel of record for Plaintiff Mac's Convenience Stores LLC ("Mac's") in the above-captioned matter. I have personal knowledge and/or have made a good faith inquiry of the facts as stated herein. If called to testify, I could and would be competent to testify to the same.

2. Fennemore is long time counsel to Mac's and its affiliates, including Circle K Stores, Inc. ("Circle K").

1

3. The law firm of Sweetnam, Schuster, and Schwartz, LLC ("Sweetnam"), including lawyers Michael Sweetnam (located in Atlanta, Georgia) and Jason Coleman (located in Nashville, Tennessee), acted as local counsel in this case.

4. I file this Affidavit pursuant to Rule 55 of the Federal Rules of Civil Procedure and applicable case law and in support of Mac's Response to Order to Show Cause and Motion for Entry of Default Judgment (the "Default Motion").[1]

5. I have been substantially involved in this case and have personal knowledge of the legal services that Fennemore rendered on behalf of Mac's.

6. I have also worked with Sweetnam throughout this matter and have personal knowledge of the services that Messrs. Sweetnam and Coleman and their firm rendered on behalf of Mac's.

7. I have reviewed the timekeeping and billing records maintained by both Fennemore and Sweetnam in the ordinary course of its business that pertain to this matter, and I have personal knowledge of the facts stated herein.

8. Additionally, with respect to Sweetnam's work in this matter, the background and skill of its attorneys as described below, and the comparable nature of its lawyers' hourly rates to those prevailing in the Atlanta, Georgia, and Nashville, Tennessee, legal communities, I have obtained information from attorneys Michael Sweetnam and Jason Coleman.

9. As described in greater detail in the Default Motion, Mac's is entitled to recovery of its attorneys' fees in accordance with the parties' contracts—specifically, Paragraphs 25(b) and 36 of the Subleases, Paragraph 34(b) of the Dealer Agreements, and Paragraph 8 of the

---

[1] Statements in this Affidavit also support Mac's contemporaneously filed Motion to Dismiss Defendants' Counterclaims for Failure to Prosecute and, as applicable, are incorporated into that Motion.

2

Guaranties— and pursuant to applicable Tennessee case law. *See, e.g., Seals v. Life Inv'rs Ins. Co. of Am.*, No. M200201753COAR3CV, 2003 WL 23093844, at *4 (Tenn. App. Dec. 30, 2003) (when contract provides for collection of attorneys' fees from the unsuccessful party in litigation, the prevailing party is entitled to enforce the contract according to its terms and the trial court has "no discretion regarding whether to award attorney's fees or not"); *Hosier v. Crye-Leike Com., Inc.*, No. M2000-01182-COA-R3CV, 2001 WL 799740, at *6 (Tenn. App. July 17, 2001) ("When the parties' contract provides that the prevailing party is entitled to reasonable attorney's fees in litigation to enforce the contract, the party who prevails is contractually entitled to recover its reasonable attorney's fees, and the trial court has no discretion regarding whether to award attorney's fees or not"); *AGCS Marine Ins., Co. v. AT Trucking Corp.*, No. 1:22-CV-313-CEA-SKL, 2023 WL 9290680, at *5-7 (E.D. Tenn. Dec. 20, 2023), *report and recommendation adopted*, No. 1:22-CV-313, 2024 WL 188379 (E.D. Tenn. Jan. 17, 2024) (awarding attorneys' fees on default judgment finding that where "[t]he Contract further provides that the prevailing party in any action to enforce the terms of the Contract shall be entitled to recover its attorney fees and costs," the party could collect attorneys' fees upon receiving a default judgment); *see also Carl's Jr. Restaurants LLC v. Margaret Karcher LeVecke Enterprises, LLC*, 3:18-CV-01357, 2020 WL 836549, at *5 (M.D. Tenn. Feb. 20, 2020) (awarding attorneys' fees on a default judgment, finding that "[u]nder the Franchise Agreements, the prevailing party in an action brought to enforce the Franchise Agreements is entitled to reimbursement of their costs and expenses, including reasonable attorneys' fees.").

10. The attorneys' fees charged to Mac's for this matter are reasonable when considering the applicable factors under Tennessee law. *See*, *e.g.*, *West-Luffman v. Ruff*, 3:23-CV-00096, 2024 WL 5402343, at *2 (M.D. Tenn. Oct. 31, 2024), *report and recommendation adopted*,

3

Case 1:23-cv-00284-TAV-CHS   Document 40-6   Filed 05/13/25   Page 4 of 15
PageID #: 581

3:23-CV-00096, 2025 WL 582493 (M.D. Tenn. Feb. 21, 2025); *see also MAKS Inc. Gen. Trading & Contracting Co. v. Sterling Operations, Inc.*, 3:10-CV-443-TAV-HBG, 2014 WL 1745432, at *10 (E.D. Tenn. Apr. 30, 2014).

11. Mac's and Circle K's longtime lead counsel, Fennemore, and local counsel for this matter, Sweetnam, performed necessary legal services on Mac's behalf related to the fees incurred.

12. The time and labor involved in this matter was significant, given the more than a year of active litigation, including, without limitation, the discovery and other work necessary to advance Mac's interests, and that Defendants asserted counterclaims and engaged in various dilatory conduct to obstruct the advancement of litigation.

13. This is not a typical default judgment case. Defendants actively litigated this case for more than a year, including advancing counterclaims for breach of contract and fraud, before their counsel moved to withdraw. This case involved substantially more work than the typical default case when a defendant fails to answer or otherwise appear.

14. Mac's counsel engaged in a substantial amount of work to advance Mac's interests prior to the circumstances giving rise to the entry of default and subsequent default judgment, including without limitation the following:

    a. After filing the Complaint, Mac's diligently attempt to personally serve Defendants at least four times over a four week period, including research into Defendants' whereabouts, as it was believed that Defendants were avoiding service. Counsel also engaged thereafter in communications with Defendants to obtain service acknowledgements and effect service once they finally started responding to outreach.

    b. Defendants initially retained counsel and appeared in the case by filing an Answer and Counterclaim on April 3, 2024. [Doc. 24]. But Defendants' Counterclaim suffered

from numerous deficiencies and was so vague and ambiguous that Mac's could not prepare a meaningful response. Also, any purported fraud claims were not sufficiently pled under Fed. R. Civ. P. 9(b). Accordingly, Mac's prepared a Motion for More Definite Statement and Alternative Motion to Dismiss under Rules 12(b)(6) and 9(b) that it intended to file prior to the response deadline. Prior to filing these motions and during the meet and confer, Defendants agreed to amend their Counterclaim if an extension was allowed, which Mac's granted.

        c.      Defendants later filed an Amended Counterclaim on May 7, 2024. [Doc. 24].

        d.      Thereafter, counsel had to prepare and file a Reply to the Amended Counterclaim, including conducting necessary factual and legal research regarding the counterclaims, prepare and service its initial disclosure statement, review Defendants' initial disclosure statement, conduct the Rule 26(f) conference and work with Defendants' counsel to prepare and file a joint case report.

        e.      Regarding discovery, Mac's counsel drafted written discovery requests aimed at both Mac's claims and Defendants' counterclaims, produced documents, reviewed Defendants' written discovery responses and initial document production, prepared a detailed meet and confer letter identifying numerous deficiencies in Defendants' discovery responses and document production and followed up on same in attempts to meet and confer due to lack of Defendants' response, and prepared a Rule 30(b)(6) notice of deposition and individual deposition notice.

        f.      Mac's counsel also repeatedly requested Defendants to participate in mediation beginning early in the case, but was ignored until late in 2024 when Defendants finally

agreed to mediate. Mac's counsel prepared for mediation, including preparing a detailed mediation statement, and participated in mediation on December 10, 2024.

      g.      After mediation was unsuccessful, Defendants' then-counsel filed a Motion to Withdraw as Defendants' counsel. Mac's counsel had to spend time analyzing the request and preparing a response strategy and participate in the hearing on defense counsel's motion.

      h.      After the Court granted defense counsel's motion to withdraw and then Defendants failed to obtain new counsel, Defendants also stopped participating in discovery, despite the fact that there were numerous impending Scheduling Order deadlines. [Doc. 22].

      i.      Mac's counsel then prepared and filed an Application for Entry of Default ("Application") on March 7, 2025. [Doc. 34].

      j.      Due to impending Scheduling Order deadlines, on March 25, 2025, Mac's also had to prepare and file a Motion to Extend Discovery Deadlines. [Doc. 37]. This motion was filed in an abundance of caution to avoid missing any deadlines while waiting for the clerk to enter default against Defendants.

      k.      Mac's counsel also needed to prepare the Default Motion, accompanying affidavits, and all accompanying exhibits, as well as the proposed default judgment.

15.    Mac's also expended significant time and energy through its attorneys to attempt to resolve this dispute prior to this litigation, through the drafting and issuance of numerous demand letters and notices of default along with negotiations between the parties beginning in early 2022 and continuing through mid-to late 2023 when it became evident a pre-litigation resolution was unlikely.

16.    The attorneys' fees exerted in pre-litigation endeavors are recoverable pursuant to the applicable contracts, specifically, in accordance with Paragraphs 25(b) and 36 of the Subleases,

Paragraph 34(b) of the Dealer Agreements, and Paragraph 8 of the Guaranties. These provisions do not only entitle Mac's to recover its attorney's fees in litigation as a prevailing party but, for example, "all expenses incurred by reason of the breach, including, without limitation, attorneys' fees and costs and paralegal expenses" (Subleases, ¶ 25(b) [Doc. 1, ¶ 36, Exs. A-C]), and all collection and court costs, as well as attorneys' fees and costs incurred to enforce Mac's rights under the Subleases (Subleases¶ 36 [Doc. 1, ¶ 36, Exs. A-C]). Further, Bhamani, as guarantor, also agreed to pay Mac's "all costs and expenses (including without limitation, liquidation costs, expense payments, and attorneys' fees and other legal costs) incurred by [Mac's]" in collection of Kaish's liabilities (as defined in the Guaranties) and any obligations of Bhamani under the Guaranties. [*Id.* at ¶ 60, Exs. N-P]. All of these include pre-litigation fees to enforce Mac's rights under the parties' agreements and remedy Defendants' breaches.

17. All of the services provided were undertaken to advance and protect Mac's interests in obtaining a favorable ruling from the Court, including on this default judgment, and dismissal of Defendants' counterclaims.

18. The billing rates and fees charged by the Fennemore and Sweetnam attorneys are reasonable in light of the individuals' ability, training, education, experience, skill, the difficulty of the work involved, time and skill required, responsibility imposed, and result obtained.

19. Counsel from Fennemore and Sweetnam both have extensive experience and skill, further justifying the reasonableness of their hourly rates and fees.

20. Fennemore has a longstanding relationship with Mac's and Circle K, and handles litigation for them in various states. Accordingly, the client wanted Fennemore to be lead counsel in this matter.

21. Fennemore's deep knowledge of Mac's business helped counsel get up to speed quickly and prosecute the case more effectively.

22. Sweetnam acted as local counsel and provided institutional knowledge regarding local procedures and reviewed filings to ensure they comported with local rules.

23. John Pearce of Fennemore is longtime lead relationship counsel for Mac's and Circle K. Mr. Pearce obtained his J.D. from the University of Oregon School of Law and has been licensed to practice law in Arizona since 1988, Nevada since 2001, and Washington since 1990. Mr. Pearce has received numerous professional honors, including *Best Lawyers in America®* (Environmental Law, Litigation – Environmental) and *Chambers USA*, Leading Lawyers for Business. He also has an AV® Preeminent™ Peer Review Rating by Martindale-Hubbell. Mr. Pearce's hourly billing rate up until November 1, 2022, during the time he provided legal services to Mac's in connection with this litigation, was $420. Mr. Pearce's hourly billing rate from November 1, 2022 through February 1, 2025, during the time he provided legal services to Mac's in connection with this litigation, was $460. Mr. Pearce's hourly billing rate from February 1, 2025 to present, during the time he provided legal services to Mac's in connection with this litigation, was $490.

24. I obtained my J.D., *magna cum laude*, from the Sandra Day O'Connor College of Law at Arizona State University and have been licensed to practice law in Arizona since 2003. I currently serve as the Chair of Fennemore's Business Litigation Practice Group, leading over 130 lawyers. I have received numerous professional honors, including *Best Lawyers in America®* (Litigation – Real Estate and Banking and Finance Law), *Southwest Super Lawyers®* (Business Litigation, Top 25 Women in Arizona, and Rising Star), and *AZ Business Magazine – Top 100 Lawyers in Arizona*, and I have an AV® Preeminent™ Peer Review Rating by Martindale-

Hubbell. My hourly billing rate during the time I provided legal services to Mac's in connection with this litigation was $460.

25. In connection with this case, I worked with Lyndsey Maasch, an associate attorney at Fennemore. Ms. Maasch obtained her J.D. from Arizona State University School, Sandra Day O'Connor College of Law. She has been admitted to practice in Arizona since 2019. Her hourly billing rate in connection with this litigation was $360.

26. In connection with this case, I worked with Claire MacCollum, an associate attorney at Fennemore. Ms. MacCollum obtained her J.D. from Boston College Law School. She has been admitted to practice in Massachusetts since 2023 and Arizona earlier in 2025. Her hourly billing rate during the time she provided legal services to Mac's in connection with this litigation was $360. Ms. MacCollum stepped into this case around the time of preparing the Default Motion and corresponding materials because Ms. Maasch was and remains on maternity leave.

27. Michael Sweetnam, lead local counsel, is a partner at Sweetnam. Mr. Sweetnam obtained his J.D. from Emory University School of Law and has been licensed to practice since 1985. His hourly billing rate during the time he provided legal services to Mac's in connection with this litigation was $450.

28. In connection with this case, I also worked with Jason Coleman, an of counsel attorney at Sweetnam. Mr. Coleman obtained his J.D. from Vanderbilt University Law School, and has been licensed to practice since 2013. His hourly billing rate during the time he provided legal services to Mac's in connection with this litigation was $325.

29. The fees charged to Mac's were fixed and paid on an hourly basis.

30. Both of Fennemore's and Sweetnam's fee agreements were in writing, and Mac's agreed to pay the rates and fees charged by Fennemore and Sweetnam.

31. The above hourly rates for all of these individual lawyers are comparable to the rates prevailing in the respective Phoenix, Arizona, Atlanta, Georgia, and Nashville, Tennessee legal communities for attorneys and paralegals of similar qualifications performing similar work at the time.

32. As described above and in the Default Motion, Mac's counsel took careful steps to ensure that they worked as efficiently and as cost effectively as possible to provide the best value for the client.

33. For example, having associate attorneys work on this matter, including for legal research and initial drafting, helped ensure that tasks were performed as efficiently as possible and reduced the overall cost to Mac's.

34. Further, based upon my personal knowledge of work performed in this case and review of the Statements of Fees and corresponding invoices for both firms, Fennemore and Sweetnam also took care not to duplicate efforts in this matter. Among other things, Fennemore stewarded the relationship with and obtained and reviewed factual information and documentation from Mac's as its longtime counsel. Fennemore also took the lead and laboring oar on researching and drafting all pleadings, filings, and discovery, as well as substantive review of documents, primary communications with Defendants and their counsel, and attending hearings. Sweetnam assisted with reviewing and revising pleadings, filings, and discovery to comport with local laws and procedures and provided counsel on Tennessee law and court-specific rules, procedures, and process.

35. Both firms also reduced or otherwise wrote off any fees, charges, or hours that were determined to be duplicative or excessive. This was done in an effort to address any real or perceived inefficiencies relating to the services performed in the litigation of this matter. The fees

10

that were written off have been excluded from the Statement of Fees and are not being sought for recovery by Mac's.

36. Attached to this Affidavit as **Exhibit 1** is a task-based itemized statement of Fennemore's attorneys' fees entitled "Statement of Fees." **Exhibit 1** states the date on which the service was performed, the time devoted to each individual unrelated task performed on such day, a description of the service provided, and the identity of the attorney performing such services. The information for **Exhibit 1** was taken from the billing statements that Fennemore submitted to Mac's in relation to this matter.

37. In computing the billings set forth in **Exhibit 1**, daily time was entered into Fennemore's electronic billing program. Each attorney who devoted time to this matter, at or about the time the services were rendered, noted the time spent and prepared a description of the work completed. The time was then submitted from the billing program to the accounting department to prepare monthly billing invoices. It is through this accounting process that the total fee amount expended on this matter was reached.

38. The total number of hours and fees for Fennemore described on **Exhibit 1** are:

| **Attorney** | **Rate** | **Hours** | **Total** |
|---|---|---|---|
| John Pearce | $420/hour, through November 1, 2022; $460/hour, from November 1, 2022 through February 1, 2025; $490/hour from February 1, 2025 to present. | 16.2 hours through November 1, 2024; 21.7 hours from November 1, 2024 through February 1, 2025; 0 hours from February 1, 2025 to present | $16,786.00 |
| Andrea Marconi | $460/hour | 111.2 hours | $51,152.00 |
| Lyndsey Maasch | $360/hour | 115.2 hours | $41,472.00 |

11

| Claire MacCollum | $360/hour | 17.5 hours | $6,300.00 |
| Yvonne Mendoza (paralegal) | $240/hour | 12.9 hours | $3096.00 |
| | | **TOTAL:** | **$118,806** |

39. Attached to this Affidavit as **Exhibit 2** is a task-based itemized statement of Sweetnam's attorneys' fees entitled "Statement of Fees." **Exhibit 2** states the date on which the service was performed, the time devoted to each individual unrelated task performed on such day, a description of the service provided, and the identity of the attorney performing such services. The information for **Exhibit 2** was taken from the billing statements that Sweetnam submitted to Mac's in relation to this matter.

40. In computing the billings set forth in **Exhibit 2**, daily time was entered into Sweetnam's electronic billing program. Each attorney who devoted time to this matter, at or about the time the services were rendered, noted the time spent and prepared a description of the work completed. The time was then submitted from the billing program to the accounting department to prepare monthly billing invoices. It is through this accounting process that the total fee amount expended on this matter was reached.

41. The total number of hours and fees for Sweetnam described on **Exhibit 2** are:

| **Attorney** | **Rate** | **Hours** | **Total** |
|---|---|---|---|
| Michael Sweetnam | $450/hour | 30.2 hours | $13,590.00 |
| Jason Coleman | $325/hour | 24.9 hours | $8,092.50 |
| | | **TOTAL:** | **$21,682.50** |

42. Fennemore and Sweetnam performed a number of necessary legal services on Mac's behalf relating to the fees incurred. *See* **Exs. 1** and **2**. All of these services were undertaken

to advance and protect Mac's interests in obtaining a favorable ruling from the Court, which was achieved.

43. During the course of the representation, I reviewed the monthly statements that Fennemore generated for work performed on behalf of Mac's in connection with this matter for the purpose of ensuring that all billed amounts were for time productively spent on Mac's behalf. Mr. Sweetnam did the same for Sweetnam's monthly statements. I have also reviewed Sweetnam's billed amounts as set forth in the Statement of Fees, attached as **Exhibit 2**.

44. Based on my experience and my familiarity with this matter, as well as communications with Sweetnam's lawyers, the hours expended by both Fennemore and Sweetnam on behalf of Mac's in successfully litigating this matter are reasonable. All of the tasks performed and fees incurred were actually, reasonably, and necessarily incurred.

45. For all of these reasons, the time spent by Fennemore and Sweetnam was actually, reasonably, and necessarily incurred. No time included in Mac's fee request was wasted, inappropriate, or unnecessary.

46. The total amount of reasonable attorneys' fees that Mac's is entitled to recover in this matter is $140,488.50.

47. In bringing this action, Mac's has also incurred taxable costs in the amount of $742.65, which it is entitled to recover pursuant to Federal Rule of Civil Procedure 54(d)(1) and 28 U.S.C.A. § 1920. *See* separately filed Bill of Costs with its accompanying exhibits.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 13th day of May, 2025.

By: *Andrea L. Marconi*
Andrea L. Marconi